# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RONALD DAVIDSON,

          Plaintiff,

v.

THE CITY OF NEW YORK, JONATHAN
DARCHE, SERGEANTS BENEVOLENT
ASSOCIATION, VINCENT VALLELONG,
POLICE BENEVOLENT ASSOCIATION OF
THE CITY OF NEW YORK, and PATRICK
HENDRY,

          Defendants.

Case No. 1:25-cv-08065-JAV

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW OF DEFENDANTS POLICE BENEVOLENT
ASSOCIATION OF THE CITY OF NEW YORK AND PATRICK HENDRY
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ...................................................................................................... 4

ARGUMENT .......................................................................................................... 7

I.    STANDARDS FOR FRCP 12(b)(6) MOTION TO DISMISS ......................................... 7

II.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST THE
      PBA DEFENDANTS.......................................................................................... 8

      A.    All Of Plaintiff's Claims Should Be Dismissed Because The PBA
            Defendants' Alleged Conduct Is Protected By The First Amendment ................. 8

      B.    The Complaint Fails To Plead A New York Human Rights Law Aiding
            And Abetting Claim Against The PBA Defendants ............................................ 11

      C.    The Complaint Fails To Plead A Federal Conspiracy Claim Against
            The PBA Defendants ................................................................................... 14

      D.    The Complaint Fails to Plead That The PBA Defendants Violated The
            Right To Record Acts .................................................................................. 18

      E.    The Complaint Fails To Plead A Tortious Interference With Contract
            Claim Against The PBA Defendants ................................................................ 20

CONCLUSION......................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred Weissman Real Estate, Inc. v. Big V. Supermarkets, Inc.*,
   268 A.D.2d 101 (2d Dep't 2000) ............................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................7, 8, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................7, 8, 16, 17

*Caruso v. Bon Secours Charity Health Sys. Inc.*,
   No. 14 CV 4447, 2015 WL 5472577 (S.D.N.Y. June 25, 2015),
   *reconsideration denied*, 2015 WL 5472624 (S.D.N.Y. July 22, 2015) ...........16, 17

*Consortium for Indep. Journalists, Inc. v. U.S.*,
   No. 23 Civ. 7088 (KPF), 2025 WL 919504 (S.D.N.Y. Mar. 26, 2025) ...................9

*Corsini v. Brodsky*,
   No. 13CV02587-LTS, 2017 WL 1207837 (S.D.N.Y. Mar. 31, 2017), *aff'd*,
   731 F. App'x 15 (2d Cir. 2018) ..............................................................15

*Critton v. N.Y.*,
   12 A.D.3d 216 (1st Dep't 2004) ..............................................................20

*Davis v. Avvo, Inc.*,
   345 F. Supp. 3d 534 (S.D.N.Y. 2018) ......................................................9, 10

*Duffy v. City of N.Y.*,
   No. 452317/2020, 2021 WL 4076944 (Sup. Ct. N.Y. Cnty. Aug. 27, 2021) .........21

*Evans v. Verdon*,
   No. CV 90-0212(JM), 1992 WL 486299 (E.D.N.Y. Oct. 23, 1992) ...................17

*Farbstein v. Hicksville Pub. Library*,
   254 F. App'x 50 (2d Cir. 2007) ...........................................................14, 17

*Favourite v. 55 Halley St., Inc.*,
   381 F. Supp. 3d 266 (S.D.N.Y. 2019) ........................................................18

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
   313 F. Supp. 2d 339 (S.D.N.Y. 2004) .....................................................10, 22

*George v. Professional Disposables Int'l, Inc.*,
   221 F. Supp. 3d 428 (S.D.N.Y. 2016) ........................................................12

*Goldman v. Reddington*,
  No. 18-CV-3662, 2021 WL 4099462 (E.D.N.Y. Sep. 9, 2021) ............................................11

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (N.Y. 1980) ......................................................................................20, 21

*Hoesten v. Best*,
  34 A.D.3d 143 (1st Dep't 2006) ................................................................................21, 22

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018).........................................................................11, 12

*Ingrassia v. Cnty. of Sullivan*,
  262 F. Supp. 2d 116 (S.D.N.Y. 2003)...............................................................................21

*Jean-Laurent v. Cornelius*,
  No. 15-cv-2217 (JGK), 2017 WL 933100 (S.D.N.Y. Mar. 8, 2017), *appeal
  dismissed*, 2017 WL 5054220 (2d Cir. 2017) ..................................................................14

*Leon v. N.Y. City Emps. Ret. Sys.*,
  240 A.D.2d 186 (1st Dep't 1997) .....................................................................................21

*Lewis v. Ala. Dep't of Pub. Safety*,
  831 F. Supp. 824 (E.D. Mich. 1993).................................................................................16

*McGarvey v. Dist. of Columbia*,
  468 F. Supp. 687 (D.D.C. 1979) ......................................................................................16

*Miles v. Armstrong*,
  207 F.2d 284 (7th Cir. 1953) ...........................................................................................15

*Moss v. Bd. of Educ. Of Brentwood Sch. Dist.*,
  No. 23-CV-6571(JS), 2025 WL 1548945 (E.D.N.Y. May 30, 2025)............................15, 17

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
  232 F. Supp. 2d 220 (S.D.N.Y. 2002)...............................................................................20

*Robinson v. City of New York*,
  No. 06 Civ. 0317 (PAC), 2006 WL 8461835 (S.D.N.Y. Nov. 14, 2006)............................20

*Sarner v. Caldwell-Boyd*,
  No. 3:21-cv-987 (JAM), 2022 WL 4132940 (D. Conn. Sep. 12, 2022)...............................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................................4

*Todras v. City of N.Y.*,
  11 A.D.3d 383 (1st Dep't 2004) .......................................................................................21

*Tyler v. Douglas*,
   280 F.3d 116 (2d Cir. 2001) ........................................................................18

*Wash. Ave. Assocs., Inc. v. Euclid Equip., Inc.*,
   229 A.D.2d 486 (2d Dep't 1996) ................................................................20

*Webb v. Goord*,
   340 F.3d 105 (2d Cir. 2003) ................................................................16, 17

**Statutes and Rules**

28 U.S.C. §1983 ..............................................................................................7, 15

42 U.S.C. §1985 ............................................................................2, 7, 14, 15, 16, 17

42 U.S.C. §1986 ............................................................................................2, 7, 14

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 7

N.Y. City Admin. Code §14-189 ................................................................7, 18, 19

N.Y. City Charter, Ch. 18-A, §§440-441 ..............................................................4, 5

N.Y. CPLR §217 ....................................................................................................21

N.Y. Civil Rights Law §76-a ..............................................................................11

N.Y. Civil Rights Law §79-p ....................................................................7, 18, 19

N.Y. Correction Law §752 ....................................................................................13

N.Y. Human Rights Law §296 ........................................................7, 11, 12, 13

Defendants Police Benevolent Association of the City of New York, Inc. ("PBA") and Patrick Hendry, the President of the PBA (together, the "PBA Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), to dismiss the Complaint of plaintiff Ronald Davidson ("Plaintiff").

## PRELIMINARY STATEMENT

This case is, at its core, an employment dispute between Plaintiff and the City of New York – and in particular, the New York City Civilian Complaint Review Board ("CCRB"), which was Plaintiff's employer and subsequently terminated his employment. Yet, apparently for strategic or publicity reasons, Plaintiff is seeking to rope the PBA Defendants into this case, albeit for alleged conduct that is squarely lawful and protected by the First Amendment: providing a brief, restrained comment in a *New York Post* article that reported on the fact that CCRB hired Plaintiff even though he has a conviction for triple homicide. The PBA, the union that represents more than 24,000 police officers in the New York City Police Department ("NYPD"), has no authority over CCRB hiring or employment decisions. In fact, CCRB was created as an independent, all-civilian agency, which has responsibility for investigating and recommending discipline for certain categories of public complaints against NYPD officers. The PBA simply commented that, to protect the integrity of the CCRB process and the safety of the public, Plaintiff should not participate in CCRB's investigations of police officers. Plaintiff complains that he was later terminated by CCRB – a decision that was up to CCRB and made for reasons known only to CCRB. Not surprisingly, none of the litany of causes of action in the Complaint states a claim against the PBA Defendants.

As a threshold matter, the PBA Defendants' public expression of their belief that Plaintiff should not have a role in CCRB investigations in the interest of protecting the integrity of the CCRB process and public safety constitutes speech that is at the heart of the First Amendment's

1

protections. The First Amendment protects expressions of opinion, particularly on matters of public concern such as a City agency responsible for police oversight employing an individual convicted for triple homicide. The First Amendment also protects petitioning the government. The conduct of the PBA Defendants alleged in the Complaint falls squarely within the opinion and petition protections of the First Amendment, and therefore was privileged and justified and cannot support a claim against the PBA Defendants. To hold otherwise would have a serious chilling effect on the ability of the public, the media, and/or unions to publicly express their views about the qualifications of candidates, employees, and officials in public positions.

The Complaint also fails to plead the elements of its claims against the PBA Defendants. Plaintiff's claim that the PBA Defendants purportedly aided and abetted a violation of the New York Human Rights Law by the City fails because the Complaint does not allege any facts to show that the PBA Defendants (i) actually participated in any purported discriminatory conduct by the City or (ii) shared a discriminatory intent with the City. The PBA Defendants had no control over Plaintiff's employment, and there are no well-pled facts to show that the PBA Defendants even had any communication with CCRB or the City regarding Plaintiff, nor any knowledge of CCRB's decision-making relating to Plaintiff's employment. And the brief comment in the article actually belies Plaintiff's claim of any discriminatory intent by demonstrating that the PBA Defendants were merely advocating for a fair CCRB process and for public safety. New York law does not extend aiding and abetting liability to one who, as here, publicly comments on a matter of public concern.

Plaintiff's conspiracy claim under 42 U.S.C. §§1985 and 1986 fails for similar reasons. Put simply, Plaintiff's scant allegations relating to the PBA Defendants do not show any meeting of the minds with the City. At most, the Complaint alleges a parallel act by the PBA Defendants

in providing a comment in a media article, but the Supreme Court has held that allegations of parallel conduct are insufficient to allege a conspiracy. Moreover, the federal conspiracy statute on which Plaintiff relies is limited to conspiracies to violate federal constitutional rights. It does not apply to rights under State or local law. Criminal history is not a federally protected class. Thus, in addition to the fact that the Complaint does not allege facts to support any conspiracy at all, it also does not allege a conspiracy to violate a federal constitutional right.

Plaintiff has also failed to state a claim against the PBA Defendants under the State and City Right to Record Acts, which create a right to record law enforcement activity. For this claim, Plaintiff alleges that he approached a group of NYPD officers and asked them for their business cards, and he filed his own CCRB complaint because he was dissatisfied with the officers' response to his request. This claim fails against the PBA Defendants for a host of reasons. First, the statutes, by their plain language, only apply to actions by "officers" to obstruct an attempt to record law enforcement activity. The PBA is not an "officer," and no allegations are made that Mr. Hendry acted as an "officer" in any relevant respect. Nor does the Complaint allege that any recording was obstructed as necessary to fit within the scope of the statutes. Plaintiff does not allege that he attempted to video the encounter, but rather he took down notes, and used those notes to file a CCRB complaint. While he alleges that CCRB subsequently terminated his employment and that his CCRB complaint was later closed, such post-recording conduct is not encompassed by the statutory text. In all events, the Complaint does not allege *any* facts linking the PBA Defendants to Plaintiff's encounter with the officers or CCRB's handling of Plaintiff's CCRB complaint.

Finally, Plaintiff has failed to plead that the PBA Defendants tortiously interfered with his purported employment contract with the City. The only well-pled allegation against the PBA

Defendants is the provision of a single comment in an article, which was lawful and justified, and therefore not tortious interference. Moreover, plaintiff acknowledges that he was a probationary employee, meaning he was an at-will employee and the City could terminate him for any reason or no reason. Under such circumstances, New York law requires a heightened showing of malice, which is clearly lacking here as the Complaint does not allege the requisite facts of fraud, threats, or misconduct by the PBA Defendants. Plaintiff is also time-barred from claiming that the City's termination of his employment was improper in any way, let alone a "breach" of any purported employment agreement, because Plaintiff was required to bring such a claim as a proceeding under CPLR Article 78, which is subject to a four-month statute of limitations. Plaintiff did not commence this action until more than nine months after his termination.

Accordingly, the Court should dismiss the Complaint against the PBA Defendants in its entirety with prejudice.

## BACKGROUND[1]

In 1972, Plaintiff was convicted of triple homicide. Comp. ¶14. He was released from prison in 2016. *Id.* ¶17. On October 21, 2024, Plaintiff was hired for the position of "Investigator – Level 1" by the New York City Civilian Complaint Review Board ("CCRB"). *Id.* ¶¶18, 20.

CCRB is an agency of the City of New York, established pursuant to New York City Charter ("Charter"), Ch. 18-A, §§440-441. CCRB is an all-civilian Board, existing independently of the New York City Police Department ("NYPD"), with the function to investigate and recommend discipline on certain categories of complaints by the public against NYPD officers.

---

[1] The following background pertinent to this motion is taken from the factual allegations in the Complaint, documents incorporated by reference therein, and matters of public record of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Charter §§440(a), (b), (c)(1). Pursuant to the Charter, CCRB's investigations must be "complete, thorough and impartial" and its "inquiries must be conducted fairly and independently, and in a manner in which the public an the police department have confidence." *Id.* §440(a). CCRB has 15 Board members, *id.* §440(b)(1), and more than 200 other employees[2]. Defendant Jonathan Darche is CCRB's Executive Director. Comp. ¶3.

The PBA, a not-for-profit corporation, is the designated collective bargaining agent for police officers employed by the NYPD. *Id.* ¶6. The PBA negotiates and advocates on police officers' behalf with the City and the NYPD in matters of policy, terms and conditions of employment, and matters relating to police officers' general welfare. The core function of the PBA is to advocate for, and protect and advance the rights and interests of, police officers. Patrick Hendry is the President of the PBA. *Id.* ¶7.

The Complaint's only well-pled factual allegation as to the PBA Defendants is that Mr. Hendry provided a brief comment regarding Plaintiff in an article published by the *New York Post*, dated November 27, 2024, entitled *Bronx Man Once Convicted of Triple Murder, Passed Over by NYPD for Security Job Lands Gig with NYPD Watchdog*.[3] The entirety of Mr. Hendry's comment, contained in a longer article by the *New York Post*, was as follows:

> Police officers should not be subjected to the judgement of someone who was convicted of three murders. Moreover, the NYPD should not be turning over mass amounts of sensitive law enforcement information to someone with this kind of criminal record. If this individual has any role in CCRB's investigations, it not only jeopardizes our members' rights – it puts public safety at risk. It's up to the NYPD to ensure that doesn't happen.

Comp. ¶¶42-43; *see also* footnote 3.

---

[2] CCRB, *2024 Annual Report*, at 56 (https://www.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/annual_bi-annual/2024-CCRB-Annual-Report.pdf)

[3] The article is available here: https://nypost.com/2024/11/27/us-news/bronx-man-once-convicted-of-triple-murder-passed-over-by-nyu-for-security-job-lands-gig-with-nypd-watchdog/

The same article also contained a comment from Vincent Vallelong, the President of the Sergeants Benevolent Association ("SBA" and, together with Mr. Vallelong, the "SBA Defendants"), which is the union representing officers with the rank of Sergeant in the NYPD. Comp. ¶¶33-34; *see also* footnote 3.

Plaintiff worked at CCRB for eight weeks of training, during which time he was a probationary employee. Comp. ¶¶47, 68. CCRB's training period is nine weeks, after which CCRB administers a test. If the trainee passes the test, he or she is assigned caseloads. *Id.* ¶50. Plaintiff alleges that he had meetings with Mr. Darche on December 3, 2024, and December 6, 2024, during which Mr. Darche indicated that he was feeling "pressure" relating to Plaintiff's employment, but the Complaint does not allege any facts to show what that purported "pressure" entailed, from whom it came, or in what manner. The Complaint does not allege facts to show any communication between the PBA Defendants and CCRB or the City regarding Plaintiff. Plaintiff alleges that he and Mr. Darche agreed that Plaintiff would work primarily as a Field investigator, rather than in any role where he would directly interact with police-facing CCRB complaints. *Id.* ¶59.

Plaintiff alleges that, on December 9, 2024, he approached a group of NYPD officers and asked them for their business cards and identification. *Id.* ¶¶78-80. Plaintiff alleges that he was unsatisfied with the officers' response and therefore wrote down descriptions of the officers and filed a CCRB complaint the same day. *Id.* ¶¶92-93, 98. Plaintiff does not allege any facts to show that the PBA Defendants were aware of Plaintiff's encounter with the officers or of Plaintiff's CCRB complaint.

On December 10, 2024, CCRB notified Plaintiff that it terminated his employment due to his failure to pass probation. *Id.* ¶¶125-126. On January 14, 2025, CCRB marked Plaintiff's

CCRB complaint as closed. *Id.* ¶99. Plaintiff does not allege any facts to show that the PBA Defendants had any communication with CCRB or the City regarding CCRB's decisions to terminate Plaintiff's employment or close Plaintiff's CCRB complaint, nor regarding Plaintiff whatsoever.

Plaintiff commenced this action on September 29, 2025, asserting five causes of action. The First Cause of Action is asserted against the City and Mr. Darche, pursuant to 28 U.S.C. §1983, for alleged First Amendment violations. That claim is not asserted against the PBA Defendants and thus is not a subject of this motion, except that the PBA Defendants join in any arguments made by other defendants as to the insufficiency of that claim to the extent Plaintiff seeks to rely on that claim as a predicate for any of his other claims against the PBA Defendants. The remaining claims are: (i) Second Cause of Action, pursuant to N.Y. Human Rights Law ("HRL") §§296(6), (15), for alleged discrimination based on criminal history against the City and for alleged aiding and abetting against the other defendants; (ii) Third Cause of Action, pursuant to 42 U.S.C. §§1985, 1986, against all defendants for alleged conspiracy to violate Plaintiff's rights; (iii) Fourth Cause of Action against all defendants for allegedly violating N.Y. Civil Rights Law ("CRL") §79-p and N.Y.C. Administrative Code §14-189 (the State and City Right to Record Acts); and (iv) Fifth Cause of Action against the PBA Defendants and the SBA Defendants for alleged tortious interference with Plaintiff's purported employment contract with the City.

## ARGUMENT

### I.    STANDARDS FOR FRCP 12(b)(6) MOTION TO DISMISS

A motion to dismiss pursuant to FRCP 12(b)(6) should be granted unless the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "naked assertions" and "conclusory statements" are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (brackets omitted).

The Complaint's well-pled factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Pleading the "possibility" of a violation is not enough; rather, a plaintiff must allege facts to show the "plausibility of entitlement to relief." *Id.* at 557 (brackets omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotes omitted)).

## II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST THE PBA DEFENDANTS

### A.    All Of Plaintiff's Claims Should Be Dismissed Because The PBA Defendants' Alleged Conduct Is Protected By The First Amendment

The Court should dismiss the Complaint in full against the PBA Defendants because the only well-pled facts against the PBA Defendants constitute conduct that is squarely protected by the First Amendment, and thus was justified and privileged and therefore cannot support a cause of action.

The Complaint does not allege any wrongful conduct by the PBA Defendants. It does not allege any false statements by the PBA Defendants. The PBA Defendants also did not terminate Plaintiff's employment or take any adverse employment action against him, nor did they have any power to do so since they were never Plaintiff's employer. Rather, the Complaint's only well-pled facts against the PBA Defendants are that Mr. Hendry, in his capacity as PBA President, provided a brief, restrained comment in a *New York Post* article expressing the viewpoint that Plaintiff should not participate in CCRB investigations of police officers. Comp.

8

¶¶42-43.[4] That statement – constituting an opinion on a matter of public interest and advocating with regard to the functioning of a City agency with investigatory authority over the PBA's members – falls squarely within the First Amendment's protections. Indeed, even if the Complaint's vague and conclusory allegations that the PBA somehow "pressured" CCRB in regard to Plaintiff's involvement in officer investigations were considered (*id.* ¶11), such conduct would fall within the First Amendment right to petition, and therefore is not actionable.

Expressions of opinion are "protected by the First Amendment to the Federal Constitution and Article 1, Section 8 of the New York State Constitution." *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 540 (S.D.N.Y. 2018); *see also Consortium for Indep. Journalists, Inc. v. U.S.*, No. 23 Civ. 7088 (KPF), 2025 WL 919504, at *16 (S.D.N.Y. Mar. 26, 2025). The PBA Defendants' brief comment at issue is unquestionably opinion protected by the First Amendment. Mr. Hendry, speaking on behalf of the union representing police officers, stated an opinion about what police officers "*should*" not be subjected to and what the NYPD "*should*" not be turning over. Comp. ¶42. He advocated a viewpoint about what the NYPD should do to seek to protect "our members' rights" and to avoid "put[ting] public safety at risk." *Id.* ¶43. Mr. Hendry did not even say anything about termination of employment. He did not call for any particular action at all, expressing the view that it is "up to the NYPD" to protect officers and the

---

[4] The Complaint also vaguely alleges that "Darche also noted that certain union members had been on a podcast complaining about Plaintiff." Comp. ¶74. That hearsay, conclusory allegation is not entitled to a presumption of truth. The Complaint does not allege who was on the podcast, whether it was PBA, SBA or another union, or what was allegedly said. Even if the allegation were considered, however, it does not change the analysis set forth herein requiring dismissal of each of Plaintiff's claims against the PBA Defendants.

public. *Id.*[5] The statement constitutes core protected opinion about a matter of public interest, and thus is not actionable under any of Plaintiff's theories. The First Amendment protection is not limited to any particular type of claim. *See, e.g.*, *Davis*, 345 F. Supp. 3d at 540 (holding that under the First Amendment, opinion cannot give rise to a federal Lanham Act or state NYGBL claim).

Moreover, even if Plaintiff's vague and conclusory allegations that the PBA Defendants somehow exerted "pressure" on the City were considered (which they should not be), any such conduct would similarly be protected under the First Amendment, not only as opinion, but under the right to petition. The First Amendment protects "participation in the political process." *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 342 (S.D.N.Y. 2004). Even if Plaintiff's conclusory allegations were considered, lobbying the government on behalf of a union of government employees (police officers) relating to the functioning of a government agency (CCRB) is protected by the First Amendment. Although this protection (referred to as the *Noerr-Pennington* doctrine) was developed by the U.S. Supreme Court in the context of antitrust laws, the underlying policy "is the need to protect the right of the people to participate in the political process" and "the doctrine is an application of the first amendment," and "[t]herefore, it is relevant outside the context of antitrust actions." *Id.* at 343 (internal quotes omitted) (dismissing tortious interference claim based on right to petition).

---

[5] The Complaint, after quoting Mr. Hendry's statement, goes on to blatantly misrepresent the statement. The Complaint purports to repackage Mr. Hendry's statement as follows: "Hendry said if the City tried to allow Plaintiff 'any role' at all at the CCRB the PBA would 'ensure that doesn't happen.'" Comp. ¶45. In fact, as noted in paragraph 43 of the Complaint (and as is clear from the article itself), the actual statement was: "If this individual has any role *in CCRB's investigations*, it not only jeopardizes our members' rights – it puts public safety at risk. *It's up to the NYPD* to ensure that doesn't happen." *Id.* ¶43 (emphasis added).

10

Plaintiff's claims against the PBA Defendants, if not dismissed, would directly infringe First Amendment speech and petition rights. Indeed, under Plaintiff's theory, the publisher of the *New York Post*, and any other media outlet that reported on CCRB's hiring of Plaintiff, thereby increasing "pressure" on CCRB, could be held liable for any subsequent adverse employment action taken by CCRB against Plaintiff. Plaintiff's theory, if accepted, would have a serious chilling effect on the ability to report on and comment about public officials. The claims against the PBA Defendants are, in effect, an effort at censorship, and should be dismissed pursuant to the protections afforded by the First Amendment, and the Court need not go any further.[6]

### B. The Complaint Fails To Plead A New York Human Rights Law Aiding And Abetting Claim Against The PBA Defendants

The Complaint's vague and conclusory allegations also fail to plead the elements of its Second Cause of Action against the PBA Defendants under HRL §296(6) for aiding and abetting the City in a purported violation of HRL §296(15). The Complaint's scant allegations do not plausibly show that the PBA Defendants actually participated in any employment determinations by the City or had the requisite discriminatory intent.

To state an aiding and abetting claim under HRL §296(6), the defendant "must have actually participated in the conduct giving rise to the claim of discrimination and engaged in direct, purposeful participation." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018) (internal quotes and brackets omitted). Additionally, "aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Id.* (internal

---

[6] Plaintiff's claims against the PBA Defendants also violate the New York anti-SLAPP statute. *See* N.Y. CRL §76-a. The PBA Defendants reserve their rights to seek costs and attorneys' fees and other relief against Plaintiff as permitted by the anti-SLAPP statute. *Id.* §70-a; *see also Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4099462, at *4-*5 (E.D.N.Y. Sep. 9, 2021).

quotes and brackets omitted); *see also George v. Professional Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 451 (S.D.N.Y. 2016). The Complaint does not plead facts to plausibly establish either element against the PBA Defendants.

The Complaint does not allege any facts to show that the PBA Defendants actually participated in any conduct violative of HRL §296(15). Section 296(15), with exceptions, provides that it is an unlawful discriminatory practice "to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses." HRL §296(15). The PBA Defendants are not alleged to have actually participated in any such denial of employment of Plaintiff by the City. Indeed, no facts are alleged to show any communication by the PBA Defendants with City regarding this matter. Nor are any facts alleged to show that the PBA Defendants even had any awareness of the City's decision-making or actions vis-à-vis Plaintiff following his hiring. *See George*, 221 F. Supp. 3d at 454 ("Other than the conclusory assertion that [defendant] was somehow involved in the 'plot' to remove plaintiff . . . the Amended Complaint contains no suggestion that [defendant] engaged in any discriminatory conduct or participated in the creation of a hostile work environment, or even that he was aware of any such conduct on the part of any other person.").

Moreover, providing an opinion in a media article on a matter of public interest does not show that the PBA Defendants actually participated in the City's decision to terminate Plaintiff. Aiding and abetting liability has been dismissed where more facts of participation are alleged than the scant allegations at issue here. *See Hughes*, 304 F. Supp. 3d at 451 (where Fox allegedly retaliated against contributor by blacklisting her after she reported sexual harassment by anchor, dismissing aiding and abetting claims against Fox employees notwithstanding allegations that they participated in the investigation of the plaintiff's claims and leaked information to the

12

*National Enquirer*). Plaintiff's theory ignores the "actual" and "direct" participation requirements for an aiding and abetting claim, and would improperly extend liability to media organizations, observers, and advocates who publicly comment or express viewpoints on a matter of public concern.

For the same reasons, the Complaint also fails to allege facts to plausibly show the PBA Defendants shared any discriminatory intent with the City. The brief comment in the *New York Post* article is plainly insufficient to plausibly show a shared discriminatory intent. In fact, as noted above, the comment did not even refer to termination of Plaintiff; rather, it opined that Plaintiff should not have a role in "*investigations*." Comp. ¶43 (emphasis added). And the non-discriminatory impetus for the comment is expressly set forth in the comment itself: to protect the fairness of the CCRB process for police officers and protect public safety. Notably, HRL §296(15), via its incorporation by reference of N.Y. Correction Law §752, allows for lawful denial of employment where: "1. There is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or 2. The issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." Correction Law §752. Thus, the comment, referencing the impact on CCRB process and public safety, was fully consistent with the law. And the PBA Defendants did not purport to require or coerce any particular action, only deferring to the NYPD: "It's up to the NYPD to ensure that doesn't happen." Comp. ¶43. The Complaint does not allege any shared discriminatory intent simply because the PBA independently commented to the media to advocate for union interests of fairness and public safety.

### C.    The Complaint Fails To Plead A Federal Conspiracy Claim Against The PBA Defendants

The Court should dismiss Plaintiff's Third Cause of Action, asserted under 42 U.S.C.

§§1985 and 1986, because (i) this federal conspiracy statute is inapplicable to Plaintiff's alleged

state law claims and (ii) Plaintiff has failed to allege facts to plausibly show that the PBA

Defendants engaged in any conspiracy with the City (or any other defendant) or that the PBA

Defendants had the requisite discriminatory motive.[7]

Section 1985(3) creates a cause of action where:

two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . .

42 U.S.C. §1985(3).

To state a claim under §1985(3), a plaintiff must allege:

(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Jean-Laurent v. Cornelius*, No. 15-cv-2217 (JGK), 2017 WL 933100, at *8 (S.D.N.Y. Mar. 8,

2017), *appeal dismissed*, 2017 WL 5054220 (2d Cir. 2017) (internal quotes omitted).

As a threshold matter, §1985 is not a stand-alone claim, in that it "provides no

substantive rights." *Id.* (internal quotes omitted). Rather, a §1985 claim is dependent on the

plaintiff sufficiently alleging a predicate violation. *Id.* Moreover, that predicate violation must be

---

[7] As the Second Circuit has held, a claim under §1986 – pertaining to an alleged failure to prevent a conspiracy – is "necessarily predicated" on a claim under §1985, and thus where, as here, the §1985 claim fails, so does the §1986 claim. *Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 51 (2d Cir. 2007).

a federal constitutional violation. Alleged violations of state statutes or laws do not support a §1985 conspiracy claim. *See Corsini v. Brodsky*, No. 13CV02587-LTS, 2017 WL 1207837, at *4 (S.D.N.Y. Mar. 31, 2017), *aff'd*, 731 F. App'x 15 (2d Cir. 2018) (holding that §1985 conspiracy claim "presupposes an agreement with a state actor to violate Plaintiff's constitutional rights"); *Moss v. Bd. of Educ. Of Brentwood Sch. Dist.*, No. 23-CV-6571(JS), 2025 WL 1548945, at *15 (E.D.N.Y. May 30, 2025) ("Plaintiff fails to plead a violation of any constitutional right, therefore, his claim for conspiracy must be dismissed."); *Sarner v. Caldwell-Boyd*, No. 3:21-cv-987 (JAM), 2022 WL 4132940, at *7-*8 (D. Conn. Sep. 12, 2022) (holding that alleged violation of state law cannot support §1985(3) claim); *Miles v. Armstrong*, 207 F.2d 284, 286-87 (7th Cir. 1953) (same).

Accordingly, even if Plaintiff pleaded a claim under the New York Human Rights Law or the other state statutes or laws referenced in the Complaint – which Plaintiff has not done – those claims could not serve as the predicate for a §1985(3) conspiracy claim.

While the Complaint's First Cause of Action asserts a federal claim against the City under 42 U.S.C. §1983 for alleged First Amendment violations, that claim has nothing to do with the PBA Defendants. That claim relates to alleged retaliation by the City based on Plaintiff having filed a CCRB complaint. The Complaint does not allege any facts linking the PBA Defendants to that claim or to show that the PBA Defendants even had knowledge of Plaintiff's CCRB complaint or any actions taken by the City in response thereto. Because the Complaint

does not allege a predicate federal constitutional violation involving the PBA Defendants, the §1985 claim should be dismissed for this reason alone.[8]

The §1985 claim should also be dismissed, however, because the Complaint is devoid of facts pertaining to the PBA Defendants to plausibly allege the conspiracy or intent elements. With respect to the conspiracy element, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotes omitted). "Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." *Caruso v. Bon Secours Charity Health Sys. Inc.*, No. 14 CV 4447, 2015 WL 5472577, at *5 (S.D.N.Y. June 25, 2015), *reconsideration denied*, 2015 WL 5472624 (S.D.N.Y. July 22, 2015) (internal quotes omitted). Moreover, the Supreme Court's *Twombly* decision is on point in analyzing a §1985 claim, because *Twombly* addressed the question of what allegations are sufficient to allege a conspiracy. The Supreme Court held:

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a [conspiracy] claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Twombly*, 550 U.S. at 556-57.

The Complaint here does not allege facts to plausibly show that the PBA Defendants

---

[8] The Complaint also vaguely refers to "Plaintiff's civil rights, equal protection of the laws, and equal privileges and immunities under the law" (Comp. ¶166), but that legal conclusion, devoid of factual enhancement, is insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Criminal history is not a protected class under the federal Constitution. *See McGarvey v. Dist. of Columbia*, 468 F. Supp. 687, 690 (D.D.C. 1979); *Lewis v. Ala. Dep't of Pub. Safety*, 831 F. Supp. 824, 825 (E.D. Mich. 1993).

entered into any agreement with any of the other defendants. Plaintiff litters the Complaint with vague and conclusory references to conspiracy – such as that "Defendant City made that decision after demands and discussions with the PBA and the SBA" (Comp. ¶124), or that "[u]pon information and belief, Darche imposed these bars at the request and in coordination and collaboration with the SBA and PBA and their respective members and heads" (*id.* ¶149), but such conclusory allegations are insufficient. *See Webb*, 340 F.3d at 111; *Moss*, 2025 WL 1548945, at *16 (holding that similar conclusory allegations were insufficient); *Caruso*, 2015 WL 5472577, at *6 (same). The Complaint does not allege facts to show any agreement, let alone the type of agreement necessary to state a §1985 claim: "an unlawful agreement to deprive Plaintiff of his constitutional rights." *Moss*, 2025 WL 1548945, at *16.

Moreover, even if the Complaint's vague allegations were accepted that the PBA asserted a "pressure campaign" on CCRB (Comp. ¶130) – even though the Complaint alleges only a single, brief comment in a single media article – asserting pressure on the government to take preferred action is not an agreement, but rather "independent action" that is insufficient to plead a conspiracy. *Twombly*, 550 U.S. at 557; *see also Farbstein*, 254 F. App'x at 51 (holding that "allegation of conduct that is readily explained as individual action" is insufficient to state a §1985 claim); *Evans v. Verdon*, No. CV 90-0212(JM), 1992 WL 486299, at *3 (E.D.N.Y. Oct. 23, 1992) ("The plaintiffs' complaint does not allege that the defendant acted in concert with any other person. Rather, the complaint suggests that the defendant acted alone."). Moreover, any such government advocacy would be squarely protected by the First Amendment as the expression of opinion and the right to petition. *See* Part II.A *supra*.

Plaintiff's §1985 claim against the PBA Defendants also fails for failure to plead facts to plausibly show the required motive element – namely, "the conspiracy must also be motivated by

some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 283-84 (S.D.N.Y. 2019) (internal quotes omitted). Significantly, criminal history is not a federally protected class. *See* footnote 8 *supra.* Moreover, the comment in the *New York Post* article does not show "invidious discrimination" of any federally protected right, but rather a desire to protect the integrity of the CCRB process for police officers and to protect public safety, specifically advocating against "jeopardiz[ing] our members' rights" and "put[ting] public safety at risk." Comp. ¶43.

### D.    The Complaint Fails to Plead That The PBA Defendants Violated The Right To Record Acts

The Court should dismiss Plaintiff's Fourth Cause of Action against the PBA Defendants under the State and City Right to Record Acts because these statutes, by their express language, are inapplicable to the PBA Defendants. Moreover, the Complaint does not allege any facts to show any conduct by the PBA Defendants within the scope of these statutes.

The Right to Record Acts are relatively recent statutes, having been adopted in 2020, and thus there is little case law addressing them. However, they are inapplicable to the PBA Defendants by their plain statutory language, in that they are limited to conduct by "officers." *See Tyler v. Douglas*, 280 F.3d 116, 122 (2d Cir. 2001) (holding that an unambiguous statute is "construed according to the plain meaning of its words," giving them their "ordinary, common meaning"). The State statue (CRL §79-p) and City statute (N.Y. City Admin. Code §14-189) are effectively the same as relevant here. Both statutes create a right to record police activity, with various exceptions. CRL §79-p(2); Admin. Code §14-189(b). The statutes create a private right of action, but only as to interference by "an officer." CRL §79-p(3) (". . . an officer acted to interfere with that person's recording of a law enforcement activity . . ."); Admin. Code §14-

189(c)(1) (". . . an officer interfered with such person's recording of police activities . . ."). As such, the statutes do not create a claim against persons or entities who are not acting in the capacity of "an officer." The PBA is a corporation. Comp. ¶6. It is not "an officer." *See* CRL §79-p(1)(a) and Admin. Code §14-189(a) (defining "officer"). Mr. Hendry is the President of the PBA. Although he is a police officer, the Complaint does not allege any conduct by him in his capacity as an officer or otherwise in a law enforcement context. The only factual allegation pertaining to him is providing a comment as "head of the PBA" in a media article. Comp. ¶42. Because the Complaint does not allege that the PBA Defendants acted as "an officer" to interfere with Plaintiff's recording activities, the Court should dismiss Plaintiff's claim under the Right to Record Acts.

In all events, however, the Complaint fails to allege facts to plausibly show any interference by the PBA Defendants with Plaintiff's recording activities whatsoever. Plaintiff alleges that his interaction with law enforcement occurred on December 9, 2024. Comp. ¶78. Plaintiff does not allege any facts to show that the PBA Defendants had any knowledge of, let alone involvement in, that encounter, or Plaintiff's subsequent CCRB complaint.

While the Court does not need to go any further to dismiss the claim against the PBA Defendants, the Complaint does not plead any violation of the Right to Record Acts at all. Plaintiff does not allege that he attempted to take any video recording of his encounter. While the statutes also define "record" to include "written notes or observations" (CRL §79-p(1)(c); Admin. Code §14-189(a)), Plaintiff does not allege any interference with his ability to take notes or observations. To the contrary, the Complaint alleges that "Plaintiff accordingly wrote down descriptions of the officers" and "filed a CCRB complaint about the conduct." Comp. ¶¶92-93. Plaintiff alleges that *CCRB* later closed the complaint and terminated Plaintiff's employment, but

such post-recording action by a City agency is not addressed by the plain language of the statutes, and certainly does not state a claim against the PBA Defendants.

### E.    The Complaint Fails To Plead A Tortious Interference With Contract Claim Against The PBA Defendants

Plaintiff's Fifth Cause of Action for tortious interference with contract, based on the City's termination of his employment, should be dismissed because (i) Plaintiff is time-barred from claiming that the City's termination of his employment was a "breach"; and (ii) Plaintiff has failed to plead the elements of a tortious interference claim, let alone the heightened malice element that is applicable because Plaintiff was admittedly a probationary, at-will employee.

"Under New York law, a claim for tortious interference with contract requires (1) the existence of a valid contract between the aggrieved party and a third party; (2) the alleged tortfeasor's knowledge of the contract; (3) the alleged tortfeasor's improper intentional interference with its performance without justification; and (4) damages." *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 224 (S.D.N.Y. 2002). Moreover, "the plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Wash. Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487 (2d Dep't 1996).

Where the plaintiff premises a tortious interference claim on termination of employment and he was an at-will employee – such as Plaintiff's probationary employment at issue here (Comp. ¶126) – the plaintiff is further required to show "wrongful means or malicious intent" on the part of the defendant.[9] *Critton v. N.Y.*, 12 A.D.3d 216, 217 (1st Dep't 2004); *see also Guard-*

---

[9] The Complaint's allegation that "Plaintiff had a contract for employment with the City and the CCRB" (Comp. ¶181) is not entitled to consideration because it is utterly conclusory, as no such contract is identified, let alone the terms thereof. The allegation is also implausible, because Plaintiff admits he was a probationary employee (*id.* ¶126). *See Robinson v. City of New York*, No. 06 Civ. 0317 (PAC), 2006 WL 8461835, at *1 (S.D.N.Y. Nov. 14, 2006) ("Since [plaintiff] has no property interest as a probationary employee, he is an at-will employee. As such, he may be dismissed for almost any reason, or for no reason at all." (internal quotes omitted)).

*Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194 (N.Y. 1980); *Hoesten v. Best*, 34 A.D.3d 143, 159 (1st Dep't 2006). "Wrongful means" is "fraudulent representations or threats" or a "violation of a duty of fidelity owed to the plaintiff by the defendant by reason of a relation of confidence existing between them." *Guard-Life*, 50 N.Y.2d at 194. "Malice" is "act[ing] solely for the purpose of harming plaintiff." *Hoesten*, 34 A.D.3d at 159.

As a threshold matter, Plaintiff's tortious interference claim should be dismissed because it is predicated on establishing that the City's termination of Plaintiff's employment was a breach of contract, but Plaintiff is time-barred from asserting such a claim. Where, as here, "the gravamen of plaintiff's complaint" seeks to challenge his termination by the City or State, such claim must be brought as a CPLR Article 78 proceeding, and thus is subject to the four-month statute of limitations under CPLR §217. *Duffy v. City of N.Y.*, No. 452317/2020, 2021 WL 4076944, at *1 (Sup. Ct. N.Y. Cnty. Aug. 27, 2021); *see also Todras v. City of N.Y.*, 11 A.D.3d 383, 384 (1st Dep't 2004). "Even non-tenured or probationary employees must invoke article 78 for review of dismissals that are allegedly arbitrary, capricious, or prohibited by statute or the constitution." *Ingrassia v. Cnty. of Sullivan*, 262 F. Supp. 2d 116, 120 (S.D.N.Y. 2003). Moreover, a plaintiff cannot circumvent the four-month statute of limitations by virtue of the label he attaches to the claim. *See Duffy*, 2021 WL 4076944, at *1 (holding that breach of contract and tortious interference claims were time-barred); *Leon v. N.Y. City Emps. Ret. Sys.*, 240 A.D.2d 186, 186 (1st Dep't 1997) (holding that five claims were time-barred). Here, Plaintiff alleges that the City terminated his employment on December 10, 2024 (Comp. ¶125), and he does not allege that he ever challenged his termination pursuant to Article 78. He did not commence this action until September 29, 2025. As such, Plaintiff is time-barred from alleging

that the City's termination of him constituted a breach of contract, and he cannot revive that time-barred claim by recasting it as a tortious interference claim.

Plaintiff's tortious interference claim against the PBA Defendants also fails because, for all of the reasons set forth in Part II.A above, any alleged conduct by the PBA Defendants was constitutionally protected and therefore justified. Such constitutionally protected alleged conduct cannot support a tortious interference claim. *See Friends of Rockland Shelter Animals*, 313 F. Supp. 2d at 343; *Alfred Weissman Real Estate, Inc. v. Big V. Supermarkets, Inc.*, 268 A.D.2d 101, 107 (2d Dep't 2000).

Nor has Plaintiff alleged facts to plausibly show that the PBA Defendants were a "but for" cause of the City's termination of Plaintiff's employment. Plaintiff's allegations are conclusory and inconsistent about why the City terminated him, on the one hand claiming it was because of his criminal history, and on the other hand claiming it was because he filed a CCRB complaint. In all events, all that is alleged against the PBA Defendants is a two-sentence comment in a larger article by the *New York Post*. No facts are alleged to show that the *New York Post* would not have published that article even absent the PBA comment. It is not plausible to infer that the PBA's comment was the but for cause of Plaintiff's termination.

Finally, the Complaint fails to plead wrongful means or malice by the PBA Defendants. The Complaint does not allege any fraud or threats by the PBA Defendants. Nor does it allege that they "acted solely for the purpose of harming plaintiff." *Hoesten*, 34 A.D.3d at 159. Indeed, the Complaint's allegations undermine any such theory. The PBA comment on which the Complaint relies elucidates the PBA's purpose: protecting the interests of police officers in the CCRB process and protecting the safety of the public. Moreover, as discussed above, the comment did not even call for Plaintiff's termination, only opining that he not be involved "in

CCRB's investigations," and left the matter "up to the NYPD." Comp. ¶43. A union advocating

for the interests of its members and for public safety is not wrongful means or malice. To hold

otherwise would seriously chill the ability of unions, the press, or the public to comment on the

qualifications of public employees.

## **<u>CONCLUSION</u>**

The Court should dismiss the Complaint against the PBA Defendants in its entirety with

prejudice.

Dated: New York, New York
      December 12, 2025

                             Respectfully submitted,

                             GOLENBOCK EISEMAN ASSOR
                             BELL & PESKOE LLP

                             By:    */s/Matthew C. Daly*
                                    Matthew C. Daly

                             711 Third Avenue
                             New York, New York 10017
                             (212) 907-7300
                             mdaly@golenbock.com

                             *Counsel for Defendants Police Benevolent*
                             *Association of the City of New York and*
                             *Patrick Hendry*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1, and Individual Practice Rule 5, it is hereby certified that the word count of this memorandum of law is 7,316 words, exclusive of the caption, table of contents, table of authorities, and signature blocks.

Dated:  December 12, 2025

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE

By:___*/s/Matthew C. Daly*_____
     Matthew C. Daly

711 Third Avenue
New York, New York 10017-4014
(212) 907-7300
mdaly@golenbock.com