**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD DAVIDSON,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THE CITY OF NEW YORK, JONATHAN DARCHE, SERGEANTS BENEVOLENT ASSOCIATION, VINCENT VALLELONG, POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, and PATRICK HENDRY,<br><br>　　　　　Defendants. | Case No. 1:25-cv-08065-JAV-BCM<br><br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW OF DEFENDANTS POLICE BENEVOLENT**
**ASSOCIATION OF THE CITY OF NEW YORK AND PATRICK HENDRY**
**IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND .......................................................................................................... 5

ARGUMENT ............................................................................................................... 8

I.       STANDARDS FOR FRCP 12(b)(6) MOTION TO DISMISS ......................... 8

II.      THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST THE
         PBA DEFENDANTS................................................................................... 9

         A.       All Of Plaintiff's Claims Should Be Dismissed Because The PBA
                  Defendants' Alleged Conduct Is Protected By The First Amendment.................. 9

         B.       The FAC Fails To Plead A New York Human Rights Law Aiding And
                  Abetting Claim Against The PBA Defendants ...................................... 11

         C.       The FAC Fails To Plead A Federal Conspiracy Claim Against The
                  PBA Defendants.......................................................................... 15

         D.       The FAC Fails to Plead That The PBA Defendants Violated The Right
                  To Record Acts ............................................................................ 19

         E.       The Complaint Fails To Plead A Tortious Interference With Contract
                  Claim Against The PBA Defendants, And The Claim Is Time-Barred................ 20

CONCLUSION.......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*,
  268 A.D.2d 101 (2d Dep't 2000) ............................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................8, 9, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................8, 9, 17, 18

*Caruso v. Bon Secours Charity Health Sys. Inc.*,
  No. 14 CV 4447, 2015 WL 5472577 (S.D.N.Y. June 25, 2015),
  *reconsideration denied*, 2015 WL 5472624 (S.D.N.Y. July 22, 2015) ...........................17, 18

*Consortium for Indep. Journalists, Inc. v. U.S.*,
  No. 23 Civ. 7088 (KPF), 2025 WL 919504 (S.D.N.Y. Mar. 26, 2025) ..................................10

*Critton v. N.Y.*,
  12 A.D.3d 216 (1st Dep't 2004) ........................................................................21

*Davis v. Avvo, Inc.*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018)..............................................................9, 10

*Duffy v. City of N.Y.*,
  No. 452317/2020, 2021 WL 4076944 (Sup. Ct. N.Y. Co. Aug. 27, 2021) ......................22, 23

*EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*,
  147 F. Supp. 3d 63 (E.D.N.Y. 2015) ..................................................................11

*Evans v. Verdon*,
  No. CV 90-0212(JM), 1992 WL 486299 (E.D.N.Y. Oct. 23, 1992) ......................................18

*Farbstein v. Hicksville Pub. Library*,
  254 F. App'x 50 (2d Cir. 2007) ....................................................................15, 18

*Favourite v. 55 Halley St., Inc.*,
  381 F. Supp. 3d 266 (S.D.N.Y. 2019)..............................................................17, 18

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
  313 F. Supp. 2d 339 (S.D.N.Y. 2004)..............................................................10, 22

*George v. Pro. Disposables Int'l, Inc.*,
  221 F. Supp. 3d 428 (S.D.N.Y. 2016)....................................................................12

*Goldman v. Reddington*,
No. 18-CV-3662, 2021 WL 4099462 (E.D.N.Y. Sep. 9, 2021) ............................................11

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183 (N.Y. 1980) ...............................................................................................21

*Hoesten v. Best*,
34 A.D.3d 143 (1st Dep't 2006) ...................................................................................21, 22

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018)............................................................................12, 13

*Ingrassia v. Cnty. of Sullivan*,
262 F. Supp. 2d 116 (S.D.N.Y. 2003)...................................................................................23

*Jean-Laurent v. Cornelius*,
No. 15-cv-2217 (JGK), 2017 WL 933100 (S.D.N.Y. Mar. 8, 2017), *appeal
dismissed*, 2017 WL 5054220 (2d Cir. 2017) .......................................................................16

*Lewis v. Ala. Dep't of Pub. Safety*,
831 F. Supp. 824 (E.D. Mich. 1993)......................................................................................17

*McGarvey v. Dist. of Columbia*,
468 F. Supp. 687 (D.D.C. 1979) ...........................................................................................17

*Morpurgo v. Incorporated Vill. of Sag Harbor*,
697 F. Supp. 2d 309 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011)......................16

*Moss v. Bd. of Educ. of Brentwood Sch. Dist.*,
No. 23-CV-6571(JS), 2025 WL 1548945 (E.D.N.Y. May 30, 2025)...............................16, 18

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
232 F. Supp. 2d 220 (S.D.N.Y. 2002)...................................................................................21

*Risley v. Rubin*,
272 A.D.2d 198 (1st Dep't 2000) .........................................................................................23

*Robinson v. City of N.Y.*,
No. 06 Civ. 0317 (PAC), 2006 WL 8461835 (S.D.N.Y. Nov. 14, 2006)................................21

*Sarner v. Caldwell-Boyd*,
No. 3:21-cv-987 (JAM), 2022 WL 4132940 (D. Conn. Sep. 12, 2022) ................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................................5

*Todras v. City of N.Y.*,
11 A.D.3d 383 (1st Dep't 2004) ...........................................................................................23

iii

*Tyler v. Douglas*,
     280 F.3d 116 (2d Cir. 2001) ........................................................................................19

*Wash. Ave. Assocs., Inc. v. Euclid Equip., Inc.*,
     229 A.D.2d 486 (2d Dep't 1996) ................................................................................21

*Webb v. Goord*,
     340 F.3d 105 (2d Cir. 2003) ...............................................................................17, 18

**Statutes and Rules**

28 U.S.C. §1983 ................................................................................................................8

42 U.S.C. §1985 .........................................................................................3, 8, 15, 16, 17, 18

42 U.S.C. §1986 ..................................................................................................3, 8, 15

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 8

Individual Rules and Practices in Civil Cases (Hon. Vargas), Rule 5(I)(i) ....................................4

N.Y. City Admin. Code §14-189 .................................................................................8, 19, 20

N.Y. City Charter, Ch. 18-A, §§440-441 ..............................................................................5, 7

N.Y. CPLR Article 78 ................................................................................................4, 23

N.Y. CPLR §217 ...........................................................................................................23

N.Y. Civil Rights Law §76-a .............................................................................................11

N.Y. Civil Rights Law §79-p ........................................................................................8, 19, 20

N.Y. Correction Law §752 ............................................................................................13, 14

N.Y. Human Rights Law §296 ...................................................................................8, 11, 12, 13

U.S. Const. amend. I ........................................................................................... *passim*

Defendants Police Benevolent Association of the City of New York, Inc. ("PBA") and Patrick Hendry, the President of the PBA (together, the "PBA Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), to dismiss the First Amended Complaint ("FAC") of plaintiff Ronald Davidson ("Plaintiff").

## PRELIMINARY STATEMENT

The FAC provides no basis to rope the PBA Defendants into this employment dispute between Plaintiff and the City of New York. Plaintiff complains about the fact that his former employer, the New York City Civilian Complaint Review Board ("CCRB"), terminated his employment. The PBA has no authority over CCRB hiring or employment decisions.

The PBA is the union that represents more than 24,000 police officers in the New York City Police Department ("NYPD"). CCRB was created as an independent, all-civilian agency, which has responsibility for investigating and recommending discipline for certain categories of public complaints against NYPD officers. The only relevant factual allegation that Plaintiff musters against the PBA Defendants is conduct that is squarely lawful and protected by the First Amendment: providing a brief comment in a *New York Post* article that reported on the fact that CCRB hired Plaintiff even though he has a conviction for triple homicide. The PBA commented that, to protect the integrity of the CCRB process and public safety, Plaintiff should not participate in CCRB's investigations of police officers. Plaintiff complains that he was later terminated by CCRB – a decision that was up to CCRB and made for reasons known only to that agency. After the PBA Defendants moved to dismiss the original Complaint, Plaintiff now concedes that he cannot rely on the article for any of his claims. Instead, the FAC resorts to speculation about purported "non-public" communications by the PBA Defendants. But the FAC lacks any factual allegations to identify such communications, let alone the content, who

1

purportedly spoke, to whom, or in what manner. Instead, tacitly recognizing that Plaintiff has no facts to support his claims against the PBA Defendants, Plaintiff littered the FAC with inflammatory mischaracterizations about other police policy matters in New York City that are *years or decades old* and *have nothing to do with Plaintiff or this case*. The FAC fails to plead a claim against the PBA Defendants.

As a threshold matter, the PBA Defendants' expression of their belief that Plaintiff should not have a role in CCRB investigations to protect the integrity of the CCRB process and public safety constitutes speech that is at the heart of the First Amendment's protections. The First Amendment protects expressions of opinion, particularly on matters of public concern such as a City agency responsible for police oversight employing an individual convicted of triple homicide. The First Amendment also protects petitioning the government. The conduct of the PBA Defendants alleged in the FAC falls squarely within the First Amendment's opinion and petition protections, and therefore was privileged and justified and cannot support a claim. To hold otherwise would have a serious chilling effect on the ability of the public, the media, and/or unions to express their views about the qualifications of public employees and officials.

The FAC also fails to plead the elements of its claims against the PBA Defendants. Plaintiff's claim that the PBA Defendants purportedly aided and abetted a violation of the New York Human Rights Law by the City fails because the FAC does not allege that the PBA Defendants (i) actually participated in any purported discriminatory conduct or (ii) shared a discriminatory intent. The PBA Defendants had no control over Plaintiff's employment, and there are no well-pled allegations that the PBA Defendants even had knowledge of CCRB's decision-making relating to Plaintiff's employment. Moreover, the PBA's comment in the article belies Plaintiff's claim of any discriminatory intent. The PBA was merely advocating for a fair

CCRB process and public safety. New York law does not extend aiding and abetting liability to one who, as here, expresses his or her opinion on a matter of public concern.

Plaintiff's conspiracy claim under 42 U.S.C. §§1985 and 1986 fails for similar reasons. Plaintiff's original Complaint relied on a purported conspiracy to violate the New York Human Rights Law. As the PBA Defendants pointed out in their first motion to dismiss, the conspiracy statute is limited to agreements to discriminate based on a *federally protected* class, of which criminal history is not one. The FAC contrives a different theory that the defendants purportedly conspired to bar Plaintiff from attending CCRB meetings in retaliation for Plaintiff filing his own CCRB complaint. But Plaintiff again fails to identify any class-based discrimination. And regardless of Plaintiff's ill-defined, shifting theories, Plaintiff's scant allegations relating to the PBA Defendants do not show any meeting of the minds with the City. There are no allegations that the PBA Defendants even knew about Plaintiff's CCRB complaint, let alone communicated with the City about Plaintiff's attendance at CCRB meetings.

Plaintiff has also failed to state a claim against the PBA Defendants under the State and City Right to Record Acts, which create a right to record law enforcement activity. Plaintiff alleges that he approached a group of NYPD officers and asked them for their business cards, and he filed his own CCRB complaint because he was dissatisfied with the officers' response. Acknowledging that Plaintiff was not obstructed from making any recording of this encounter, the FAC perplexingly relies on CCRB's subsequent termination of Plaintiff's employment to claim that he was "threatened" for recording law enforcement activity. This claim fails against the PBA Defendants for a host of reasons. First, the statutes only apply to actions by "officers" to interfere with an attempt to record law enforcement activity. The PBA is not an "officer," and no allegations are made that Mr. Hendry acted as an "officer" in any relevant respect. Second, the

statutes only encompass certain actions to "interfere" with the recording of an encounter. They do not apply to CCRB's termination of Plaintiff's employment *after the recording was already completed*. Third, in all events, the FAC does not allege that the PBA Defendants threatened Plaintiff or were even aware of Plaintiff's CCRB complaint.

Finally, Plaintiff has failed to plead that the PBA Defendants tortiously interfered with his purported employment contract with the City. Plaintiff is forced to acknowledge that the PBA's comment to the *New York Post* is not actionable, and no other relevant, well-pled facts against the PBA Defendants are alleged. Moreover, plaintiff was a probationary employee, meaning he was at-will and the City could terminate him for any reason or no reason. Under such circumstances, New York law requires a heightened showing of malice, which is lacking here. The FAC does not allege the requisite facts of fraud, threats, or misconduct by the PBA Defendants. Plaintiff is also time-barred from asserting claims premised on his termination, because Plaintiff was required to bring such a claim as a proceeding under CPLR Article 78, which has a four-month statute of limitations. Plaintiff did not commence this action until more than nine months after his termination.

Accordingly, the Court should dismiss the FAC against the PBA Defendants. Given that Plaintiff already amended the Complaint after the PBA Defendants' prior motion to dismiss, the Court should dismiss the FAC against the PBA Defendants with prejudice. *See* Individual Practice Rule 5(I)(i).

## BACKGROUND[1]

In 1972, Plaintiff was convicted of triple homicide. FAC ¶23. He was released from prison in 2016. *Id.* ¶26. On October 21, 2024, CCRB hired Plaintiff for the position of "Investigator – Level 1." *Id.* ¶¶27, 29.

CCRB is an agency of the City of New York, established pursuant to City Charter ("Charter"), Ch. 18-A, §§440-441. It is an all-civilian Board, with the function to investigate and recommend discipline on certain categories of complaints by the public against NYPD officers. Charter §§440(a), (b), (c)(1). Pursuant to the Charter, CCRB's investigations must be "complete, thorough and impartial" and its "inquiries must be conducted fairly and independently, and in a manner in which the public and the police department have confidence." *Id.* §440(a). CCRB has 15 Board members, *id.* §440(b)(1), and more than 200 other employees.[2] Defendant Jonathan Darche is CCRB's Executive Director. FAC ¶3.

The PBA, a not-for-profit corporation, is the designated collective bargaining agent for police officers employed by the NYPD. *Id.* ¶6. The PBA negotiates and advocates on police officers' behalf with the City and the NYPD in matters of policy, terms and conditions of police officers' employment, and matters relating to police officers' general welfare. The core function of the PBA is to advocate for, and protect and advance the rights and interests of, police officers. Patrick Hendry is the President of the PBA. *Id.* ¶7.

---

[1] The following background is taken from the factual allegations in the FAC, documents incorporated by reference therein, and matters of public record of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] CCRB, *2024 Annual Report*, at 56 (https://www.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/annual_bi-annual/2024-CCRB-Annual-Report.pdf).

The FAC's only well-pled allegation as to the PBA Defendants is that Mr. Hendry provided a brief comment regarding Plaintiff in an article published by the *New York Post*, dated November 27, 2024, entitled *Bronx Man Once Convicted of Triple Murder, Passed Over by NYPD for Security Job Lands Gig with NYPD Watchdog*.[3] The entirety of Mr. Hendry's comment was as follows:

> Police officers should not be subjected to the judgement of someone who was convicted of three murders. Moreover, the NYPD should not be turning over mass amounts of sensitive law enforcement information to someone with this kind of criminal record. If this individual has any role in CCRB's investigations, it not only jeopardizes our members' rights – it puts public safety at risk. It's up to the NYPD to ensure that doesn't happen.

FAC ¶¶51-52; ECF 24-2.

The same article also contained a comment from Vincent Vallelong, the President of the Sergeants Benevolent Association ("SBA" and, together with Mr. Vallelong, the "SBA Defendants"), which is the union representing officers with the rank of Sergeant in the NYPD. FAC ¶¶42-43; ECF 24-2.

Plaintiff worked at CCRB for eight weeks of training, during which time he was a probationary employee. FAC ¶¶39, 60. Plaintiff alleges that he had meetings with Mr. Darche on December 3, 2024, and December 6, 2024, during which Mr. Darche indicated that he was feeling "pressure" relating to Plaintiff's employment, but the FAC does not allege what that purported "pressure" entailed, from whom it came, or in what manner. *Id.* ¶¶64-90.

Plaintiff alleges that, on December 9, 2024, he approached a group of NYPD officers and asked them for their business cards and identification. *Id.* ¶¶91-93. Plaintiff was unsatisfied with the officers' response and therefore wrote down descriptions of the officers and filed a CCRB

---

[3] The article is in the record at ECF 24-2.

complaint the same day. *Id.* ¶¶105-06, 142. The FAC does not allege that the PBA Defendants

were aware of Plaintiff's encounter with the officers or Plaintiff's CCRB complaint.

On December 10, 2024, CCRB notified Plaintiff that it terminated his employment due to

his failure to pass probation. *Id.* ¶¶119-20. Plaintiff alleges that, "[a]s part of the discharge . . .

Defendant Darche also imposed certain restrictions on Plaintiff" – namely, barring Plaintiff from

entering CCRB or attending CCRB's monthly meetings. *Id.* ¶¶167, 169, 172. On January 14,

2025, CCRB marked Plaintiff's CCRB complaint as closed. *Id.* ¶143. Plaintiff does not allege

that the PBA Defendants had any communication with CCRB or the City regarding CCRB's

decisions to terminate Plaintiff's employment, impose any alleged restrictions on Plaintiff, or

close Plaintiff's CCRB complaint.

Lacking any factual allegations to show any conduct by the PBA Defendants other than

the comment in the *New York Post* article, the FAC resorts to alleging second-hand,

mischaracterized information plucked from media articles about prior police policy issues in

New York City. *Id.* ¶¶181-203. Those inflammatory allegations have nothing to do with Plaintiff

or this case, and they involve matters that are years or decades old. If anything, the allegations

confirm that the PBA is frequently at loggerheads with the City and CCRB on policy matters –

quite the opposite of an "aiding and abetting" or "conspiracy" relationship. For example, the

FAC alleges that the PBA vehemently opposed the restructuring of CCRB from a Board made up

of NYPD officers to an all-civilian Board. *Id.* ¶¶183-84. CCRB nevertheless became, and has

remained, an all-civilian Board. Charter §440(b)(1).

Plaintiff commenced this action on September 29, 2025. On December 12, 2025, the

PBA Defendants moved to dismiss the original Complaint [ECF 20, 21], and the other

defendants also moved to dismiss. Instead of opposing the motions, Plaintiff filed the FAC on

January 12, 2026. The FAC relies on two theories: "Either (1) the City fired Plaintiff for his background alone; or (2) it fired him because of the CCRB report." FAC ¶137. Unlike the original Complaint, the FAC asserts that Plaintiff is not relying on the *New York Post* article for his claims, other than for "context." *Id.* ¶56. The FAC asserts five causes of action. The First Cause of Action is asserted against the City and Mr. Darche, pursuant to 28 U.S.C. §1983, for First Amendment violations. That claim is not asserted against the PBA Defendants and thus is not a subject of this motion. The remaining claims are: (i) Second Cause of Action, pursuant to N.Y. Human Rights Law ("HRL") §§296(6), (15), for discrimination based on criminal history against the City and aiding and abetting against the other defendants; (ii) Third Cause of Action, pursuant to 42 U.S.C. §§1985, 1986, against all defendants for conspiracy to violate Plaintiff's rights by purportedly retaliating against him for filing his CCRB complaint; (iii) Fourth Cause of Action against all defendants for violating N.Y. Civil Rights Law ("CRL") §79-p and N.Y.C. Administrative Code ("Admin. Code") §14-189 (the State and City Right to Record Acts); and (iv) Fifth Cause of Action against the PBA Defendants and the SBA Defendants for tortious interference with Plaintiff's purported employment contract with the City.

## ARGUMENT

## I.   STANDARDS FOR FRCP 12(b)(6) MOTION TO DISMISS

A motion to dismiss pursuant to FRCP 12(b)(6) should be granted unless the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "naked assertions" and "conclusory statements" are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (brackets omitted).

The Complaint's well-pled factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Pleading the "possibility" of a violation is not enough; rather, a plaintiff must allege facts to show the "plausibility of entitlement to relief." *Id.* at 557 (brackets omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotes omitted)).

## II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST THE PBA DEFENDANTS

### A.    All Of Plaintiff's Claims Should Be Dismissed Because The PBA Defendants' Alleged Conduct Is Protected By The First Amendment

The Court should dismiss the FAC in full against the PBA Defendants because the allegations against them constitute conduct that is squarely protected by the First Amendment, and thus was justified and privileged and cannot support a claim.

The FAC does not allege any wrongful conduct by the PBA Defendants. It does not allege that they made any false statements or threats. The PBA Defendants also did not terminate Plaintiff's employment or take any adverse employment action against him, nor did they have any power to do so. Rather, the FAC's only well-pled allegation against the PBA Defendants is that Mr. Hendry, in his capacity as PBA President, expressed a viewpoint in the *New York Post* article that Plaintiff should not participate in CCRB investigations of police officers. FAC ¶¶51-52.[4] Such an expression of opinion is "protected by the First Amendment to the Federal Constitution and Article 1, Section 8 of the New York State Constitution." *Davis v. Avvo, Inc.*,

---

[4] The Complaint also vaguely alleges that "Darche also noted that certain union members had been on a podcast complaining about Plaintiff." FAC ¶87. That hearsay, conclusory allegation is not entitled to a presumption of truth. The FAC does not allege who was on the podcast, whether it was PBA, SBA or another union, or what was allegedly said. Even if the allegation were considered, however, it does not change the analysis set forth herein.

9

345 F. Supp. 3d 534, 540 (S.D.N.Y. 2018); *see also Consortium for Indep. Journalists, Inc. v. U.S.*, No. 23 Civ. 7088 (KPF), 2025 WL 919504, at *16 (S.D.N.Y. Mar. 26, 2025). Mr. Hendry, speaking on behalf of the union, stated an opinion about what police officers "*should*" not be subjected to and what the NYPD "*should*" not be turning over. FAC ¶51. He advocated a viewpoint about what the NYPD should do to seek to protect "our members' rights" and to avoid "put[ting] public safety at risk." *Id.* ¶52. Mr. Hendry did not even say anything about termination of employment, opining that it is "up to the NYPD" to protect officers and the public. *Id.*[5] The statement constitutes protected opinion about a matter of public interest, and thus is not actionable under any of Plaintiff's theories. The First Amendment protection is not limited to any particular type of claim. *See, e.g.*, *Davis*, 345 F. Supp. 3d at 540 (holding that opinion cannot give rise to a federal Lanham Act or state NYGBL claim). Indeed, Plaintiff is forced to concede that he cannot sue over the article. *Id.* ¶56. That admission is fatal to Plaintiff's claims, because there are no allegations that the PBA expressed any other or different view on this matter than what is contained in the article.

But even if the FAC's vague and conclusory allegations that the PBA somehow "pressured" CCRB were considered (*id.* ¶¶11, 109) – which they should not be – such conduct would similarly be protected under the First Amendment, not only as opinion, but under the right to petition. The First Amendment protects "participation in the political process." *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 342 (S.D.N.Y. 2004). Even if

---

[5] The FAC, after quoting Mr. Hendry's statement, goes on to misrepresent the statement. The FAC repackages Mr. Hendry's statement as follows: "Hendry said if the City tried to allow Plaintiff 'any role' at all at the CCRB the PBA would 'ensure that doesn't happen.'" FAC ¶54. The actual statement was: "If this individual has any role *in CCRB's investigations*, it not only jeopardizes our members' rights – it puts public safety at risk. *It's up to the NYPD* to ensure that doesn't happen." *Id.* ¶52 (emphasis added).

Plaintiff's conclusory allegations were considered, lobbying the government on behalf of a union of government employees (police officers) relating to the functioning of a government agency (CCRB) is protected by the First Amendment. Although this protection (referred to as the *Noerr-Pennington* doctrine) was developed by the U.S. Supreme Court in the context of antitrust laws, the underlying policy "is the need to protect the right of the people to participate in the political process" and "the doctrine is an application of the first amendment," and "[t]herefore, it is relevant outside the context of antitrust actions." *Id.* at 343 (internal quotes omitted) (dismissing tortious interference claim based on right to petition); *see also EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*, 147 F. Supp. 3d 63, 70 (E.D.N.Y. 2015) (same).

Plaintiff's claims against the PBA Defendants, if not dismissed, would infringe First Amendment speech and petition rights. Indeed, under Plaintiff's theory, the publisher of the *New York Post*, and any other media outlet or influencer that reported on CCRB's hiring of Plaintiff, thereby increasing "pressure" on CCRB, could be held liable for any subsequent adverse employment action taken by CCRB. Plaintiff's theory, if accepted, would have a serious chilling effect on the ability to report on and comment about public officials. The claims against the PBA Defendants are an effort at censorship, and should be dismissed pursuant to the protections afforded by the First Amendment.[6]

B.    **The FAC Fails To Plead A New York Human Rights Law Aiding And Abetting Claim Against The PBA Defendants**

The FAC's vague and conclusory allegations also fail to plead that the PBA Defendants aided and abetted the City in a purported violation of HRL §296(15) for discrimination based on

---

[6] Plaintiff's claims against the PBA Defendants also violate the New York anti-SLAPP statute. *See* N.Y. CRL §76-a. The PBA Defendants reserve their rights to seek costs and attorneys' fees and other relief against Plaintiff. *Id.* §70-a; *see also Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4099462, at *4 (E.D.N.Y. Sep. 9, 2021).

criminal conviction. The FAC's scant allegations do not plausibly show that the PBA Defendants actually participated in any employment determination by the City or had the requisite discriminatory intent.

To state an aiding and abetting claim under HRL §296(6), the defendant "must have actually participated in the conduct giving rise to the claim of discrimination and engaged in direct, purposeful participation." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018) (internal quotes and brackets omitted). Additionally, "aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Id.* (internal quotes and brackets omitted). The FAC does not plausibly allege either element against the PBA Defendants.

The FAC does not allege that the PBA Defendants actually participated in any conduct violative of HRL §296(15), which provides that, subject to exceptions, it is an unlawful discriminatory practice "to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses." HRL §296(15). The PBA Defendants are not alleged to have actually participated in any such denial of Plaintiff's employment by the City. *See George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 454 (S.D.N.Y. 2016) ("Other than the conclusory assertion that [defendant] was somehow involved in the 'plot' to remove plaintiff . . . the Amended Complaint contains no suggestion that [defendant] engaged in any discriminatory conduct or participated in the creation of a hostile work environment, or even that he was aware of any such conduct on the part of any other person.").

12

While Plaintiff asserts that the *New York Post* article provides "context" for his claims (FAC ¶56), providing an opinion in a media article does not create a plausible inference that the PBA Defendants *actually participated* in the City's decision to terminate Plaintiff. Aiding and abetting liability has been dismissed where more facts of participation were alleged than the scant allegations at issue here. *See Hughes*, 304 F. Supp. 3d at 451 (where company allegedly retaliated against plaintiff her after she reported sexual harassment, dismissing aiding and abetting claims against employees notwithstanding allegations that they participated in the investigation of the plaintiff's claims and leaked information to the *National Enquirer*). Plaintiff's theory ignores the "actual" and "direct" participation requirements for an aiding and abetting claim, and would improperly extend liability to media organizations and advocates who express viewpoints on a matter of public concern.

For the same reasons, the FAC also fails to plausibly allege the PBA Defendants shared any discriminatory intent with the City. In fact, the PBA's comment did not even refer to termination of Plaintiff's employment. Rather, it opined that Plaintiff should not have a role in "*investigations*." FAC ¶52 (emphasis added). And the non-discriminatory impetus for that opinion is set forth in the comment: to protect the fairness of the CCRB process and public safety. *Id.*

Additionally, Plaintiff overlooks the fact that HRL §296(15), via its incorporation by reference of N.Y. Correction Law §752, allows for lawful denial of employment where:

> 1. There is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or 2. The issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

Correction Law §752. Thus, the PBA's opinion about Plaintiff's impact on CCRB's investigation process and public safety was consistent with the law. And the PBA Defendants did not purport to require or coerce any particular action, only deferring "to the NYPD to ensure that doesn't happen." FAC ¶52. The FAC does not allege any shared discriminatory intent simply because the PBA advocated for union interests of fairness and public safety.

Lacking any facts to plead a claim, the FAC asserts that "the aiding and abetting can be inferred" from four allegations. *Id.* ¶223. But those allegations only underscore that Plaintiff is overreaching and speculating. First, the FAC alleges that "[t]he Union Defendants objected to Plaintiff being employed at all at the CCRB: Plaintiff 'was convicted of three homicides, *so he should be disqualified*.'" *Id.* ¶223(a). The quoted comment is from the SBA, not the PBA. *Id.* ¶42. The FAC also misquotes the comment, which stated, "he should be disqualified from doing any investigations involving the NYPD and its members." *Id.* As such, neither the SBA nor the PBA called for Plaintiff's termination, only his removal from investigations. And Plaintiff concedes that the unions' comments in the article are not actionable. *Id.* ¶56.

Second, the FAC asserts that "Darche and other City employees made repeated reference to 'heat,' 'pressure,' and the like from the unions." *Id.* ¶223(b). That assertion mischaracterizes the FAC's allegations. While the FAC alleges that Darche may have used the words "heat" or "pressure," no facts are alleged to show that he actually mentioned any communication with the PBA. Plaintiff is only speculating that Darche may have been referring to the unions. Moreover, even if Darche were referring to the unions, it is equally possible that Darche was referring to purported "pressure" from their comments in the article, which does not come close to aiding and abetting.

Third, the FAC asserts that "[t]he unions' efforts, like coordinated union efforts in the past, were not limited to public comments, but involved significant behind the scenes direct advocacy." *Id.* ¶223(c). The FAC does not allege any facts to show that any such "behind the scenes direct advocacy" occurred. The FAC's reliance on unrelated police policy matters years or decades in the past does not support a plausible inference as to what occurred in this case.

Fourth, the FAC asserts that "[t]he City officials who said directly it was the unions' demands that led to Plaintiff's firing were not lying." *Id.* ¶223(d). But no such facts are alleged. To the contrary, the FAC alleges that the sole reason Plaintiff was given for his termination was that he failed to pass probation. *Id.* ¶120.

Thus, Plaintiff's aiding and abetting claim is entirely unsupported. Whether taken individually or collectively, the allegations do not remotely support Plaintiff's inferential leap of any actual participation in discriminatory conduct or a shared discriminatory intent. Moreover, "pressure," "heat," or "advocacy" concerning a public employee's suitability for investigating officers is protected by the First Amendment.

### C.    The FAC Fails To Plead A Federal Conspiracy Claim Against The PBA Defendants

The Court should dismiss Plaintiff's Third Cause of Action, asserted under 42 U.S.C. §§1985 and 1986, because: (i) this conspiracy statute is inapplicable since Plaintiff does not allege that he was discriminated against based on any federally protected class; and (ii) Plaintiff fails to plausibly allege that the PBA Defendants engaged in any conspiracy with the City (or any other defendant) or that the PBA Defendants had the requisite discriminatory motive.[7]

---

[7] A claim under §1986 – pertaining to an alleged failure to prevent a conspiracy – is "necessarily predicated" on a claim under §1985. Thus, where, as here, the §1985 claim fails, so does the §1986 claim. *Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 51 (2d Cir. 2007).

> To state a conspiracy claim under §1985, a plaintiff must allege:
>
> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Jean-Laurent v. Cornelius*, No. 15-cv-2217 (JGK), 2017 WL 933100, at *8 (S.D.N.Y. Mar. 8, 2017), *appeal dismissed*, 2017 WL 5054220 (2d Cir. 2017) (internal quotes omitted).[8]

Section 1985 is not a stand-alone claim, in that it "provides no substantive rights." *Id.* (internal quotes omitted). Rather, a §1985 claim is dependent on the plaintiff sufficiently alleging a predicate violation. *Id.* Moreover, that predicate violation must be a class-based, federal constitutional violation. Alleged violations of state statutes or laws do not support a §1985 conspiracy claim. *See Moss v. Bd. of Educ. of Brentwood Sch. Dist.*, No. 23-CV-6571(JS), 2025 WL 1548945, at *15 (E.D.N.Y. May 30, 2025); *Sarner v. Caldwell-Boyd*, No. 3:21-cv-987 (JAM), 2022 WL 4132940, at *7-*8 (D. Conn. Sep. 12, 2022). Accordingly, even if Plaintiff pleaded a claim under the HRL or the other local statutes referenced in the FAC – which Plaintiff has not done – those claims could not serve as the predicate for a §1985 conspiracy claim.

Plaintiff essentially acknowledges as much in the FAC, reframing the conspiracy claim by alleging that "Defendants collaborated to retaliate against Plaintiff for filing the CCRB report, including by barring him from ever speaking at future CCRB meetings." FAC ¶227. The Court does not need to go further to dismiss this claim than the fact that the FAC does not allege that the PBA Defendants even knew about Plaintiff's CCRB complaint. Plaintiff's theory is also defective, however, because a §1985 conspiracy claim requires "some racial or perhaps

---

[8] "A constitutional conspiracy claim must be pled with at least some degree of particularity." *Morpurgo v. Incorporated Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (internal quotes omitted).

otherwise class-based" discrimination. *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 284 (S.D.N.Y. 2019) (internal quotes omitted). Plaintiff's theory premised on his CCRB complaint does not satisfy that requirement. Moreover, for the avoidance of doubt, criminal history is not a protected class under the federal Constitution. *See McGarvey v. Dist. of Columbia*, 468 F. Supp. 687, 690 (D.D.C. 1979); *Lewis v. Ala. Dep't of Pub. Safety*, 831 F. Supp. 824, 825 (E.D. Mich. 1993).[9]

The §1985 claim should also be dismissed because the FAC is devoid of facts pertaining to the PBA Defendants to plausibly allege the conspiracy or intent elements. With respect to the conspiracy element, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotes omitted). "Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." *Caruso v. Bon Secours Charity Health Sys. Inc.*, No. 14 CV 4447, 2015 WL 5472577, at *5 (S.D.N.Y. June 25, 2015), *reconsideration denied*, 2015 WL 5472624 (S.D.N.Y. July 22, 2015) (internal quotes omitted). The Supreme Court's *Twombly* decision is on point, because it addressed the question of what allegations are sufficient to allege a conspiracy. The Supreme Court held:

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a [conspiracy] claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Twombly*, 550 U.S. at 556-57.

---

[9] The FAC also vaguely refers to "Plaintiff's civil rights, equal protection of the laws, and equal privileges and immunities under the law" (FAC ¶226), but that legal conclusion is insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

The FAC does not plausibly allege that the PBA Defendants entered into any agreement with any of the other defendants. Plaintiff's conspiracy allegations are utterly conclusory, such as that "Defendant City made that decision after demands and discussions with the PBA and the SBA, which Plaintiff does not have access to" (FAC ¶118), or that "[u]pon information and belief, Darche imposed these bars at the request and in coordination and collaboration with the SBA and PBA and their respective members and heads" (*id.* ¶180). Such conclusory allegations are insufficient. *See Webb*, 340 F.3d at 111; *Moss*, 2025 WL 1548945, at *16; *Caruso*, 2015 WL 5472577, at *6.

Moreover, even if the FAC's vague allegations that the PBA asserted a "pressure campaign" on CCRB (FAC ¶109) were accepted, asserting pressure on the government to take preferred action is not an agreement, but rather "independent action" that is insufficient to plead a conspiracy. *Twombly*, 550 U.S. at 557; *see also Farbstein*, 254 F. App'x at 51 (holding that "allegation of conduct that is readily explained as individual action" is insufficient to state a claim); *Evans v. Verdon*, No. CV 90-0212(JM), 1992 WL 486299, at *3 (E.D.N.Y. Oct. 23, 1992) ("The plaintiffs' complaint does not allege that the defendant acted in concert with any other person. Rather, the complaint suggests that the defendant acted alone.").

Finally, Plaintiff's §1985 claim also fails because the FAC does not plausibly allege the required motive element – namely, "the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Favourite*, 381 F. Supp. 3d at 283-84 (internal quotes omitted). As set forth above, Plaintiff does not allege that he is a member of any federally protected class, let alone any discriminatory animus by the PBA Defendants.

18

**D.      The FAC Fails to Plead That The PBA Defendants Violated The Right To Record Acts**

The Court should dismiss Plaintiff's Fourth Cause of Action against the PBA Defendants under the State and City Right to Record Acts because these statutes, by their express language, are inapplicable to the PBA Defendants. Moreover, the FAC does not allege any conduct by the PBA Defendants within the scope of these statutes.

The Right to Record Acts are relatively recent statutes, having been adopted in 2020, and thus there is little case law addressing them. However, they are inapplicable to the PBA Defendants by their plain language. *See Tyler v. Douglas*, 280 F.3d 116, 122 (2d Cir. 2001) (holding that an unambiguous statute is "construed according to the plain meaning of its words," giving them their "ordinary, common meaning" (internal quotes omitted)). First, the statutes are limited to conduct by "officers." The State statue (CRL §79-p) and City statute (Admin. Code §14-189) are effectively the same as relevant here. Both statutes create a right to record police activity, with various exceptions. CRL §79-p(2); Admin. Code §14-189(b). The statutes create a private right of action, but only as to interference by "an officer." CRL §79-p(3) (". . . an officer acted to interfere with that person's recording of a law enforcement activity . . ."); Admin. Code §14-189(c)(1) (". . . an officer interfered with such person's recording of police activities . . ."). As such, the statutes do not create a claim against persons or entities who are not acting in the capacity of "an officer." The PBA is a corporation. FAC ¶6. It is not "an officer." *See* CRL §79-p(1)(a) and Admin. Code §14-189(a) (defining "officer"). Mr. Hendry is the President of the PBA. Although he is a police officer, the FAC does not allege any conduct by him in his capacity as an officer or otherwise in a law enforcement context. Because the FAC does not allege that the PBA Defendants acted as "an officer" to interfere with Plaintiff's recording activities, the Court should dismiss Plaintiff's claim under the Right to Record Acts.

19

Second, the Right to Record Acts are also inapplicable because the FAC does not allege any "interference" with recording within the scope of the statutes. Plaintiff concedes that he was not obstructed from making a recording. FAC ¶234. He relies on CRL §79-p(3)(a)(ii), which creates a claim where "*an officer acted to interfere with that person's recording of a law enforcement activity*, including but not limited to, by: . . . (ii) threatening that person for recording a law enforcement activity."[10] (Emphasis added.) Plaintiff alleges that after he filed his CCRB complaint, CCRB terminated his employment. FAC ¶240. Such post-recording activity is not covered by the statute. If the legislature intended to create a claim for alleged retaliation in the Right to Record Acts, it could have done so in the statutory text, but it did not.

In all events, the FAC does not allege any "threat" by the PBA Defendants to support Plaintiff's theory. In fact, Plaintiff does not allege that the PBA Defendants even knew about Plaintiff's CCRB complaint. No does Plaintiff allege any communication by the PBA Defendants to Plaintiff to satisfy the statutory requirement of "threatening *that person* . . . ." CRL §79-p(3)(a)(ii) (emphasis added). Plaintiff is attempting to dramatically expand the Right to Record Acts into broad retaliation statutes and sweep in parties having no involvement in, or even knowledge of, the recorded encounter, in contravention of the statutory text.

### E.    The Complaint Fails To Plead A Tortious Interference With Contract Claim Against The PBA Defendants, And The Claim Is Time-Barred

Plaintiff's Fifth Cause of Action for tortious interference with contract should be dismissed because: (i) Plaintiff has failed to plead the elements of a tortious interference claim, let alone the heightened malice requirement that applies because Plaintiff was a probationary, at-will employee; and (ii) Plaintiff is time-barred from asserting claims premised on the City's termination of his employment.

---

[10] The City analog is Admin. Code §14-189(c)(1)(b).

"Under New York law, a claim for tortious interference with contract requires (1) the existence of a valid contract between the aggrieved party and a third party; (2) the alleged tortfeasor's knowledge of the contract; (3) the alleged tortfeasor's improper intentional interference with its performance without justification; and (4) damages." *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 224 (S.D.N.Y. 2002). Moreover, "the plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Wash. Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487 (2d Dep't 1996).

Where the plaintiff premises a tortious interference claim on termination of at-will employment – such as Plaintiff's probationary employment at issue here (FAC ¶39) – the plaintiff is further required to show "wrongful means or malicious intent."[11] *Critton v. N.Y.*, 12 A.D.3d 216, 217 (1st Dep't 2004); *see also Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194 (N.Y. 1980); *Hoesten v. Best*, 34 A.D.3d 143, 159 (1st Dep't 2006). "Wrongful means" is "fraudulent representations or threats" or a "violation of a duty of fidelity owed to the plaintiff by the defendant by reason of a relation of confidence existing between them." *Guard-Life*, 50 N.Y.2d at 194. "Malice" is "act[ing] solely for the purpose of harming plaintiff." *Hoesten*, 34 A.D.3d at 159.

Initially, Plaintiff's tortious interference claim against the PBA Defendants fails because, for all of the reasons set forth in Part II.A above, any alleged conduct by the PBA Defendants was constitutionally protected and therefore justified. Such constitutionally protected alleged

---

[11] The allegation that "Plaintiff had a contract for employment with the City and the CCRB" (FAC ¶247) is not entitled to consideration because it is utterly conclusory, as no such contract is identified, let alone the terms thereof. The allegation is also implausible, because Plaintiff admits he was a probationary employee (*id.* ¶39). *See Robinson v. City of N.Y.*, No. 06 Civ. 0317 (PAC), 2006 WL 8461835, at *1 (S.D.N.Y. Nov. 14, 2006) ("Since [plaintiff] has no property interest as a probationary employee, he is an at-will employee. As such, he may be dismissed for almost any reason, or for no reason at all." (internal quotes omitted)).

conduct cannot support a tortious interference claim. *See Friends of Rockland Shelter Animals*, 313 F. Supp. 2d at 343; *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 107 (2d Dep't 2000).

Nor has Plaintiff plausibly alleged that the PBA Defendants were a "but for" cause of the City's termination of his employment. Plaintiff's allegations are conclusory and inconsistent about why the City terminated him, on the one hand claiming it was because of his criminal history, and on the other hand claiming it was because he filed a CCRB complaint. FAC ¶137. And all that is alleged against the PBA Defendants is a two-sentence comment in a larger article by the *New York Post*. On these scant allegations, it is not plausible to infer that the PBA Defendants were the but for cause of Plaintiff's termination.

The FAC also fails to plead wrongful means or malice by the PBA Defendants. The FAC does not allege any fraud or threats by the PBA Defendants. Nor does it allege that they "acted solely for the purpose of harming plaintiff." *Hoesten*, 34 A.D.3d at 159. Rather, the FAC's allegations undermine any such theory. The PBA's comment elucidated the PBA's purpose: protecting the interests of police officers and public safety. FAC ¶¶51-52. Moreover, as discussed above, the comment did not even call for Plaintiff's termination, and left the matter "up to the NYPD." *Id.* ¶52. A union advocating for the interests of its members and public safety is not wrongful means or malice.

In addition to the fact that Plaintiff failed to plead the elements of a tortious interference claim, the claim (as well as each of Plaintiff's other claims) is time-barred. Where, as here, "the gravamen of plaintiff's complaint" seeks to challenge his termination by the City or State, such claim must be brought as a CPLR Article 78 proceeding, and thus is subject to the four-month statute of limitations under CPLR §217. *Duffy v. City of N.Y.*, No. 452317/2020, 2021 WL

22

4076944, at *1 (Sup. Ct. N.Y. Co. Aug. 27, 2021); *see also Todras v. City of N.Y.*, 11 A.D.3d 383, 384 (1st Dep't 2004). "Even non-tenured or probationary employees must invoke article 78 for review of dismissals that are allegedly arbitrary, capricious, or prohibited by statute or the constitution." *Ingrassia v. Cnty. of Sullivan*, 262 F. Supp. 2d 116, 120 (S.D.N.Y. 2003). A plaintiff cannot circumvent the four-month statute of limitations by the label he attaches to the claim. *See Duffy*, 2021 WL 4076944, at *1 (holding that breach of contract and tortious interference claims were time-barred). Under controlling law, the four-month statute of limitations applies to Plaintiff's claims against the PBA Defendants even though they were not his employer. *See Risley v. Rubin*, 272 A.D.2d 198, 198-99 (1st Dep't 2000) (where plaintiff's claims against university for breach of his employment contract were time-barred, "[f]or the same reason, plaintiff's cause of action for tortious interference with the subject employment contract by defendant Rubin, the chairman of his department . . . [was] properly dismissed").

As such, because the gravamen of all of Plaintiff's claims is a challenge to the City's termination of his employment, which occurred more than nine months before he commenced this action, his claims are time-barred.

## **CONCLUSION**

The Court should dismiss the FAC against the PBA Defendants in its entirety. Since Plaintiff already had an opportunity to amend his claims, the dismissal should be with prejudice.

Dated: New York, New York
      February 11, 2026

                                         Respectfully submitted,

                                         SPENCER FANE LLP

                                         By:___*/s/Matthew C. Daly*_____
                                               Matthew C. Daly

                                         711 Third Avenue
                                         New York, New York 10017
                                         (212) 907-7300
                                         mdaly@spencerfane.com

                                         *Counsel for Defendants Police Benevolent*
                                         *Association of the City of New York and*
                                         *Patrick Hendry*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1, and Individual Practice Rule 5, it is hereby certified that the word count of this memorandum of law is 7,343 words, exclusive of the caption, table of contents, table of authorities, and signature blocks.

Dated:  February 11, 2026        SPENCER FANE LLP

By:   */s/Matthew C. Daly*
      Matthew C. Daly

711 Third Avenue
New York, New York 10017-4014
(212) 907-7300
mdaly@spencerfane.com