UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X    25-CV-8065 (JAV) (BCM)

RONALD DAVIDSON,                                                   :

                         Plaintiff,                     :

       -against-                                                           :

THE CITY OF NEW YORK, JONATHAN DARCHE,        :
SERGEANTS BENEVOLENT ASSOCIATION,
VINCENT VALLELONG, POLICE BENEVOLENT               :
ASSOCIATION OF THE CITY OF NEW YORK, AND
PATRICK HENDRY,                                                        :

                     Defendants.                  :

------------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY DEFENDANTS SERGEANTS BENEVOLENT ASSOCIATION AND VINCENT VALLELONG TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

THE QUINN LAW FIRM PLLC
Attorneys for the SBA and Vincent Vallelong
399 Knollwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................... 1

Preliminary Statement .......................................................................................................... 1

Pertinent Facts ....................................................................................................................... 2

Argument ............................................................................................................................... 5

    POINT I     PLAINTIFF DOES NOT AND CANNOT PLAUSIBLY ALLEGE
                  A NYSHRL CLAIM AGAINST THE SBA OR MR. VALLELONG ...................... 6

    POINT II    PLAINTIFF DOES NOT AND CANNOT PLAUSIBLY ALLEGE A CIVIL
                  CONSPIRACY CLAIM UNDER 42 U.S.C. SECTIONS 1985 OR 1986. ............. 10

    POINT III   PLAINTIFF'S RIGHT TO RECORD ACT CLAIMS FAIL AS
                  AGAINST THE SBA AND MR. VALLELONG ................................................... 12

    POINT IV   PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE OF CONTRACT
                  FAILS AS AGAINST THE SBA AND MR. VALLELONG .............................. 14

Conclusion. ........................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*106 N. Broadway, LLC v. Lawrence*,
   189 A.D.3d 733 (2d Dep't 2020) ................................................................................. 16

*Artemov v. City of New York*,
   2024 U.S. Dist. LEXIS 61570 (E.D.N.Y. April 3, 2024) ........................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 5

*Bennett v. State Farm Fire & Cas. Co.*,
   137 A.D.3d 731 (1st Dep't 2016) ............................................................................. 15

*Brown v. City of Oneonta*,
   221 F.3d 329 (2d Cir. 2000) .................................................................................. 11, 12

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ........................................................................................ 5

*Cine SK8, Inc. v. Town of Henrietta*,
   507 F.3d 778 (2d Cir. 2007) ...................................................................................... 11

*Clemmons v Hodes*,
   2017 U.S. Dist. LEXIS 158550 (S.D.N.Y. 26, 2017) ................................................ 11

*Conte v. Emmons*,
   895 F. 3d 168 (2d Cir. 2018) ..................................................................................... 14

*Doe v. Fenchel*,
   837 Fed App. 67 (2d Cir. 2021) ................................................................................ 11

*Dolan v. Connolly*,
   794 F.3d 290 (2d Cir. 2015) ...................................................................................... 11

*Flaherty v. Dixon*,
   2023 U.S. Dist. LEXIS 26876 (S.D.N.Y. Feb. 16, 2023) .......................................... 15

*Griffin v. Sirva, Inc.,*
    858 F.3d 69 (2d Cir. 2017).................................................................................. 6

*Guard-Life Corp. v. Parker Hardware Mfg. Corp.,*
    50 N.Y.2d 183 (1980) ...................................................................................... 16

*Hearst Comms., Inc. v. Rugs Am. Corp.,*
    2025 U.S. LEXIS 158583 (S.D.N.Y. Aug. 15, 2025)...................................... 5

*L.K. v. Sewanhaka Central High School Distr.,*
    641 Fed Appx. 56 (2d Cir. 2016). ................................................................. 12

*Laurent v. G&G Bus. Serv., Inc.,*
    2012 U.S. Dist. LEXIS 208693 (S.D.N.Y. Feb. 21, 2012).............................. 6

*Miller v. Livanis,*
    189 A.D.3d 446 (1st Dep't 2020) .................................................................. 16

*Morales v. City of N.Y.,*
    2025 U.S. Dist. LEXIS 142860 (E.D.N.Y. July 25, 2025) ............................ 13

*Rich v. Fox News Network, LLC,*
    939 F. 3d 112 (2d Cir. 2019)......................................................................... 14

*Smalley v. Dreyfus Corp.,*
    10 N.Y.3d 55 (2008) ...................................................................................... 15

*Stapleton v. New York City Dep't of Educ.,*
    2025 U.S. Dist. LEXIS 13798 (S.D.N.Y. July 18, 2025) ................................ 7

*Stuart's, LLC v. Edelman,*
    196 A.D.3d 711 (2d Dep't 2021) .................................................................. 16

*Thomas v. Roach,*
    165 F3d 137 (2d Cir. 1999)........................................................................... 11

**Statute(s)**                                                                                   **Page(s)**

N.Y. Civil Rights Law §79 ................................................................................... 12

N.Y. Civil Rigts Law §79 ..................................................................................... 12

N.Y. Corrections Law §752 ................................................................................................... 6

N.Y.C. Admin. Code §14-189 .............................................................................................. 12

N.Y.C. Admin. Code §14-189(a) .......................................................................................... 13

N.Y.H.R.L. §296(15) ............................................................................................................ 6

N.Y.H.R.L. §296(6) .............................................................................................................. 6

**Introduction**

Defendants Sergeants Benevolent Association ("SBA") and Vincent Vallelong ("Mr. Vallelong"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6), dismissing the amended complaint of Plaintiff Ronald Davidson ("Plaintiff" or "Mr. Davidson") with prejudice.

**Preliminary Statement**

This is an employment case. After serving 43 years in prison for triple homicide, Plaintiff was hired on a probationary basis by the Civilian Complaint Review Board ("CCRB"). He was fired by the CCRB during the eighth week of his probationary period. Plaintiff now claims that his termination by the CCRB was unlawfully influenced by the defendants. As against the SBA and Mr. Vallelong, Plaintiff asserts an aiding and abetting claim under the New York Human Rights Law ("NYSHRL"); a civil conspiracy claim brought under 42 U.S.C. §§1985 and 1986; claims for relief under the New York State and New York City "Right to Record" statutes; and a common-law claim for tortious interference with contract.

For the reasons detailed below, the amended complaint must be dismissed as against the SBA and Mr. Vallelong. First, the NYSHRL claim fails because the amended complaint still fails to plausibly allege wrongful conduct by the SBA or Mr. Vallelong that could be construed as aiding or abetting an unlawful practice. *See* Point I. Second, Plaintiff's civil conspiracy claims fail because Plaintiff still fails to allege race or class-based discriminatory conduct and, even assuming he had, the allegations are impermissibly generalized and conclusory. *See* Point II. Third, Plaintiff's claim under the "Right to Record" statutes fail on the merits because, as modified in the amended complaint, this claim is simply another expression of Plaintiff's employment retaliation claim, as to which there are no specific allegations against the SBA or

Mr. Vallelong.  *See* Point III.  Finally, Plaintiff still fails to allege that he entered into a contract of employment, or that the SBA or Mr. Vallelong engaged in any wrongful conduct in interfering with any such contract or with any prospective business relations between him and the CCRB. *See* Point IV.

In sum, Plaintiff's amended complaint fails to plausibly allege any claims for relief against the SBA or Mr. Vallelong.  Accordingly, for the reasons detailed below, this action should be dismissed, as against the SBA and Mr. Vallelong, with prejudice.

**Pertinent Facts**

The pertinent facts are set forth in Plaintiff's amended complaint, a copy of which is annexed as **Exhibit A** to the accompanying declaration of Andrew C. Quinn, Esq.  All citations herein using the form "(¶___)" are to paragraphs in the Plaintiff's amended complaint.

Plaintiff is a resident of the state of New York. (¶1)  The SBA is a corporation with its principal place of business at 35 Worth Street, New York, New York. (¶4)  Mr. Vallelong is the president and head of the SBA. (¶5)

Plaintiff was convicted of a triple homicide in 1972. (¶23)  He served 43 years in prison (¶24), and was released in 2016. (¶26)  On August 30, 2024, Plaintiff was hired by the New York Civilian Complaint Review Board ("CCRB") as an "Investigator-Level 1." (¶27)  Plaintiff was fired by the CCRB during the eighth week of his probationary period. (¶39)

In a New York Post Article, a copy of which is annexed to the Quinn Declaration as **Exhibit B**, Mr. Vallelong opined that Plaintiff "was convicted of three homicides, so he should be disqualified from doing any investigations involving the NYPD and its members." (¶42); *see also* New York Post Article ("Article") (Ex. B).  In the same article, Mr. Vallelong was quoted as stating that Plaintiff "should not have access to sensitive materials involving victims" (¶43);

that "We will protest every time [Plaintiff] is scheduled to sit in on a case against one of our members" (¶50); and, notably, that "If CCRB wants to hire [Plaintiff], they should do it for another position." *Id.*

Plaintiff alleges that Mr. Vallelong, either personally or through a subordinate, caused the SBA to protest Plaintiff's participation in a specific case, (¶45), and that this caused defendant City of New York (the "City") to remove Plaintiff from that case. (¶46)  Plaintiff also expressed his view that Mr. Vallelong's demand was the equivalent of a "demand that Plaintiff not be allowed to work at the CCRB." (¶47)

On December 9, 2024, as Plaintiff was exiting the subway near Chambers Street, he saw four members of the NYPD's Strategic Response Group and two regular officers engaged in what he perceived to be misconduct. (¶¶91-92)  Plaintiff asked all the officers involved for business cards, but they refused his request. (¶¶80-104)  Plaintiff alleges that he then wrote down "descriptions" of the officers, which he asserts qualified as "making a recording" for purposes of the Right to Record Acts. (¶105)

Plaintiff then filed a complaint about the incident with the CCRB. (¶106)  His complaint was "marked closed" on January 14, 2025. (¶143)  Plaintiff alleges, "on information and belief," that the "CCRB closed the complaint as part of its coordination with Defendants SBA and the [Police Benevolent Association] and retaliation against Plaintiff." (¶146)  Plaintiff alleges that the CCRB violated its own policy in closing the complaint so quickly. (¶¶147-166)

Plaintiff alleges that the City decided to fire Plaintiff in retaliation for the filing of his CCRB complaint on December 9, 2024. (¶117)  Plaintiff alleges, without providing any detail, that the "City made that decision after demands and discussions with the PBA and the SBA, which plaintiff does not have access to." (¶118)  Plaintiff alleges that when he was fired, a

CCRB official named Jennel Brooks told him it was because he was "putting too much heat on the agency." (¶¶119-123) Plaintiff interpreted Ms. Brook's statement as referring to a "pressure campaign by Defendants PBA and SBA." (¶124)

The amended complaint adds general allegations about the police unions, and discusses some prior specific cases. (¶¶181-202). Citing specific historical examples—which include public protests (¶¶184, 187), public calls for resignations of CCRB officials (¶¶188, 189), work slowdowns (¶¶191, 192, 198), and specific comments and actions aimed against then Mayor DiBlasio (¶¶199-202)—Plaintiff alleges that in his particular case, "as Defendants SBA and the PBA have done time and time again, they pressured the City to unconstitutionally and unlawfully retaliate against Plaintiff by barring Plaintiff from First Amendment activity and imposing prior restraints on his First Amendment activity, and unlawfully terminating him." (¶203)

The amended complaint sets forth the same five claims for relief that were contained in the original complaint. Of these, only the second, third, fourth and fifth include claims against the SBA and Mr. Vallelong. The first claim for relief is a Section 1983 first amendment retaliation claim against defendants City and Plaintiff's CCRB supervisor, defendant Jonathan Darche. (¶¶204-216) The second claim for relief alleges unlawful discrimination and aiding and abetting discrimination against all defendants in violation of Sections 296(15) and 296(6) of the NYSHRL. (¶¶1217-224) The third claim alleges a civil conspiracy against all defendants in violation of 42 U.S.C. §§1985 and 1986. (¶¶225-231). The fourth claim alleges a violation of the New York City and New York State "Right to Record" statutes against all Defendants. (¶¶232-245) Finally, the fifth claim for relief alleges a state-law claim for tortious interference with contract against the SBA and PBA Defendants. (¶¶246-254)

**Argument**

This Court recently summarized the applicable standards for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Hearst Comms., Inc. v. Rugs Am. Corp.,* 2025 U.S. LEXIS 158583, at *4-5 (S.D.N.Y. Aug. 15, 2025) (Vargas, J.).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the plaintiff is entitled to relief." *Id.* 679.

In deciding a motion to dismiss a complaint, the Court "should assume [the] veracity" of the allegations and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 and 678. While a plaintiff is not required to assert detailed factual allegations to survive a motion to dismiss, the complaint demands more than "'an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Id.,* quoting *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim . . . will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Finally, when "evaluating a Rule 12(b)(6) motion, courts may consider documents that are attached to, integral to, or incorporated by the pleadings." *Hearst Comms.,* 2025 U.S. Dist. LEXIS 158583, at *5, citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

## POINT I

### PLAINTIFF DOES NOT AND CANNOT
### PLAUSIBLY ALLEGE A NYSHRL CLAIM
### AGAINST THE SBA OR MR. VALLELONG

Section 296(15) of the NYSHRL provides, in relevant part, that it "shall be an unlawful discriminatory practice for any person . . . to deny . . . employment to any individual by reason of his . . . having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of Article 23-A of the correction law." N.Y.H.R.L. §296(15).  In relevant part, Article 23-A of the Corrections Law provides that "No application for . . . employment . . . shall be denied or acted upon adversely by reason of the individual's having been previously convicted or one or more criminal offenses . . . unless: (1) there is a direct relationship between one or more of the previous criminal offenses and the . . . employment sought or held by the individual, or (2) . . . the granting or continuation of the employment would involve an unreasonable risk to property or the safety or welfare of specific individuals or the general public." N.Y. Corrections Law §752.  Finally, Section 296(6) of the NYSHRL provides, in relevant part, that it "shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y.H.R.L. §296(6).

A non-employer can be liable for a violation of NYHRL Section 296(15) to the extent that it "aids or abets employment discrimination against individuals with a prior criminal conviction." *Griffin v. Sirva, Inc.,* 858 F.3d 69, 70 (2d Cir. 2017).  However, to survive a motion to dismiss, a complaint alleging an aiding and abetting claim must do more than make a conclusory allegation that a defendant aided and abetted discrimination. *See Laurent v. G&G Bus. Serv., Inc.,* 2012 U.S. Dist. LEXIS 208693, at *29 (S.D.N.Y. Feb. 21, 2012) (conclusory allegations that a defendant "aided [and] abetted" discriminatory conduct "fail to state a claim

-6-

that is plausible on its face"); *see also Stapleton v. New York City Dep't of Educ.,* 2025 U.S. Dist. LEXIS 13798 (S.D.N.Y. July 18, 2025) (Vargas, J.) (conclusory allegations insufficient to survive motion to dismiss).

Here, even with the additional allegations set forth in the amended complaint, Plaintiff still offers no more than conclusory allegations that Mr. Vallelong or the SBA actually participated in any decision by the CCRB to fire Plaintiff. Plaintiff alleges that the SBA and Mr. Vallelong "protested" his involvement with a CCRB case and that his termination by the CCRB was made after discussions with them. (¶¶45, 117-118) However, the complaint lacks any detail about specific statements or communications by which the SBA or Mr. Vallelong exercised, or even attempted to exercise, influence over the CCRB's employment decision. At best, the amended complaint alleges that after handing Plaintiff a termination letter, a CCRB official named Jennel Brooks told Plaintiff he was "putting too much heat on the agency." (¶¶119-123) The amended complaint then concludes without specific factual support that "Brooks was referring to, and Plaintiff understood her to be referring to, the pressure campaign by Defendants PBA and SBA" (¶124), and that, "[u]pon information and belief, the 'heat' reference was referring to specific communications, threatening things such as strikes or other action, if the City did not fire Plaintiff. (¶125).

These allegations are wholly conclusory. The amended complaint does not allege a specific statement by Brooks or any other facts from which it could be plausibly inferred that Brooks's "too much heat" comment was connected to a "pressure campaign" by the police unions. It just concludes that Brooks was referring to such a campaign. Likewise, the amended complaint does not detail specific communications with the City by Mr. Vallelong, or anyone at the SBA, that actually threatened "strikes or other action" if Plaintiff was not fired. It simply

concludes, on information and belief no less, that such communications occurred. Absent specific factual enhancement, conclusory allegations like these are not sufficient to nudge the possibility of something occurring into the realm of plausibility, which is required to survive a motion to dismiss. *See Twombly*, 550 U.S. at 570. Indeed, given that the SBA and the CCRB are  regularly in an adversarial relationship when it comes to CCRB's role in investigating civilian complaints against NYPD Sergeants, it would be implausible to assume, as Plaintiff asks this Court to do, that the SBA or Mr. Vallelong would have influence over CCRB's own employment decision in the case of Plaintiff.

Plaintiff attempts to add some detail by quoting the New York Post Article, but in pleading his claim for relief he conspicuously omits significant language. In paragraph 221, within the second claim for relief, Plaintiff states that Mr. Vallelong was opposed to him working at CCRB because he "'he was convicted of three homicides, so he should be disqualified.'" Complaint, at ¶221, quoting N.Y. Post Article; *see also id.* at ¶113(a). Mr. Vallelong's complete statement, however, was that Plaintiff "should be disqualified *from doing any investigations involving the NYPD and its members*." *Id.* at ¶42 (emphasis added). And Mr. Vallelong went on to state: "If CCRB wants to hire him, they should do it for another position." *Id.* at ¶50. Accordingly, Mr. Vallelong very pointedly did not call for Plaintiff to be terminated; he merely gave a statement to the press that Plaintiff should be given a position at CCRB that would not put him directly across the table from an SBA member during the CCRB's investigatory interview of the member. *See* Article (Ex. B). In the absence of specific allegations detailing how Mr. Vallelong, or the SBA, played a role in the decision to terminate Plaintiff, his aiding and abetting claim against them must be dismissed.

Plaintiff also adds allegations in the amended complaint regarding the alleged role and

influence of the SBA and the PBA on the CCRB.  But these allegations too are highly

conclusory.  For example, the amended complaint states that the police unions have "an

extensive legal relationship with the City of New York" (¶18), and that when the unions make

demands, "those demands are not idle discussion in the marketplace of ideas, they are (at least,

quite often) legal assertions of authority with implicit (or explicit) threats to take actions

available exclusively to police unions." (¶21)  Not only are these statements conclusory, even

assuming they were true, the police unions' theoretical influence over the City of New York does

not make it *plausible,* as opposed to merely possible, that the SBA Defendants exercised any

such influence over the CCRB regarding the Plaintiff's employment.

Plaintiff cites a series of historical examples in the amended complaint in which,

allegedly, the SBA or the PBA successfully demanding action by the City.  For example,

Plaintiff alleges that when then Mayor John Lindsay sought to restructure the CCRB to have

civilian members, the PBA staged a massive police protest, and that the "SBA and PBA

successfully petitioned for a public ballot measure to return the Board to an all-police panel"

(¶186).  Plaintiff alleges that the PBA organized another rally in 1992 when then Mayor David

Dinkins proposed amendments to strengthen the CCRB. (¶187)  Plaintiff alleges that in 2022, an

interim CCRB chairwoman was asked to resign, not by the SBA or the PBA, but "by the Deputy

Mayor for Public Safety, after she criticized police for a delay in handing over critical evidence

related to a fatal 2019 shooting." (¶188)  Plaintiff alleges that in November 2024, the then

chairman of the CCRB resigned "after a sustained public campaign against him led by the PBA."

(¶189), and that his predecessor had been endorsed by the PBA. (¶190)

Plaintiff similarly suggests that the police unions exercise influence by illegal work

slowdowns known as "blue flue" and related actions. (¶191)  As examples, Plaintiff cites a 1985

case in which the PBA engaged in a work slowdown in response to the indictment of a NYPD

Officer (¶192); a 2019 case in which the PBA issued a vote of no-confidence against then Mayor

de Blasio after then Police Commissioner James O'Neill announced that he was firing the officer

responsible for the shooting death of Eric Garner (¶195); and a 2020 incident in which the SBA

denounced the killing of two officers and accused Mayor de Blasio of selling out the NYPD to

"'vile creatures' who 'hate cops.'" (¶199)  Citing these disparate examples, spanning over thirty

years of New York City history, Plaintiff concludes that, *in this case,* "as Defendants SBA and

PBA have done time and time again, they pressured the City to unconstitutionally and unlawfully

retaliate against Plaintiff." (¶203)  The general examples cited by Plaintiff, even assuming their

accuracy, are simply not enough to plausibly infer that the SBA, or Mr. Vallelong, engaged in

any specific communications with the CCRB to influence the CCRB's employment decisions

with respect to Plaintiff.

   In short, like the original complaint, the amended complaint is devoid of any specific

factual allegations referencing specific things that the SBA or Mr. Vallelong said or did that

would be sufficient to allow this Court to plausibly infer that either the SBA or Mr. Vallelong

aided and abetted a violation of Plaintiff's rights under Section 296(15).  Plaintiff's NYSHRL

claim as against the SBA and Mr. Vallelong must therefore be dismissed.

## POINT II
### PLAINTIFF DOES NOT AND CANNOT PLAUSIBLY ALLEGE A
### CIVIL CONSPIRACY CLAIM UNDER 42 U.S.C. SECTIONS 1985 OR 1986

   To allege a viable claim under 42 U.S.C. §1985, a plaintiff must allege specific facts

demonstrating "'[i] a conspiracy; [ii] for the purpose of depriving, either directly or indirectly,

any person or class of persons of equal protection of the laws; [iii] an act in furtherance of the

conspiracy; whereby [iv] a person is deprived of any right of a citizen of the United States.'"

*Clemmons v. Hodes,* 2017 U.S. Dist. LEXIS 158550 (S.D.N.Y. 26, 2017), quoting *Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir. 2000). "The conspiracy must also be 'motivated  by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Dolan v. Connolly,* 794 F.3d 290, 296 (2d Cir. 2015), quoting *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir. 2007). Finally, it is well settled that conspiracy allegations must be made in detail, and that conclusory allegations of a conspiracy are not sufficient to survive a motion to dismiss. *See Thomas v. Roach,* 165 F3d 137, 147 (2d Cir. 1999); *Artemov v. City of New York,* 2024 U.S. Dist. LEXIS 61570, at *7 (E.D.N.Y. April 3, 2024), citing *Doe v. Fenchel,* 837 Fed App. 67, 68-69 (2d Cir. 2021).

In the instant case, Plaintiff's 42 U.S.C. §1985 conspiracy claim fails for two basic reasons. First, Plaintiff, who is white,[1] has not and cannot allege that any alleged conspiracy to violate his rights was motivated by racial or any other class-based, invidious discriminatory animus. *See Dolan,* 794 F.3d at 296. Plaintiff did not add any allegations in the amended complaint to suggest that he is not white, that he is a member of a protected race, or that he is a member of a protected class. Second, the amended complaint is utterly devoid of any specific details concerning the alleged conspiracy, including who reached an agreement, when, where or how. Plaintiff did, however, add another conclusory allegation to the amended complaint in an apparent attempt to buttress his conspiracy claim. Plaintiff alleges that "Darche and City officials' references to the Mayor's office mean that the union Defendants engaged in collaboration with the Mayor's office to get that office to try to force Plaintiff's firing." (¶115)

---

[1] Plaintiff's picture is featured in the New York Post Article referenced throughout the amended complaint, and attached here as Exhibit B, which this Court may therefore review in considering a motion to dismiss. *See **Bronx man once convicted of triple murder, passed over by NYU for security job lands gig with NYPD watchdog**,* By Larry Celona, Kevin Sheehan and Steve Janoski, New York Post, November 27, 2024 | 5:49pm (https://nypost.com/2024/11/27/us-news/bronx-man-once-convicted-of-triple-murder-passed-over-by-nyu-for-security-job-lands-gig-with-nypd-watchdog/)

Again, this is an entirely conclusory allegation that this Court need not consider in determining whether the amended complaint plausibly alleges a viable conspiracy. In the absence of even the most basic factual details, Plaintiff's conspiracy claim under 42 U.S.C. §1985 must be dismissed.

Because the Section 1985 conspiracy claim is not plausible on its face, Plaintiff's derivative claim pursuant to 42 U.S.C. §1986 for neglect or refusal to prevent a Section 1985 conspiracy must fail as well. *See Brown,* 221 F.3d at 341; *L.K. v. Sewanhaka Central High School Distr.,* 641 Fed Appx. 56, 59 (2d Cir. 2016).

## POINT III
### PLAINTIFF'S RIGHT TO RECORD ACT CLAIMS FAIL AS AGAINST THE SBA AND MR. VALLELONG

Section 79-p(2) of the New York Civil Rights Law provides, in relevant part, that a "person not under arrest or in the custody of a law enforcement official has the right to record law enforcement activity." N.Y. Civil Rigts Law §79-p(2). Under Section 79-p(1), the term "record" means to "capture or attempt to capture any moving or still image, sound, or impression through the use of any recording device, camera, or any other device capable of capturing audio, moving or still images, or by way of written notes or observations." N.Y. Civil Rights Law §79-p(1)(c).

Section 14-189 of the New York City Administrative Code provides, similarly, that a "person may record police activities and maintain custody and control of any such recording and of any property or instruments used in such recording." N.Y.C. Admin. Code §14-189(b). Under Section 14-189(a), the term "record" means "to capture or attempt to capture any moving or still image, sound, or impression through the use of any recording device, camera, or any other device capable of capturing audio, moving or still images, or by way of written notes or observations." N.Y.C. Admin. Code §14-189(a).

Plaintiff alleges that on December 9, 2024, while exiting a subway station, he saw four members of the NYPD's SRG Unit and two regular officers engaged in "what [Plaintiff] perceived as misconduct." (¶91)  Plaintiff does not allege that any of the officers he observed at this point were Sergeants or members of the SBA.  Plaintiff claims that he politely asked the officers for their business cards and identification. (¶93)  When an officer said he did not have any cards, Plaintiff alleges that he asked the officer to write down his identifying information on a piece of paper. (¶98)  In response, the officer allegedly said "I don't have any paper." (¶102)

These allegations, even assuming their truth, do not plausibly allege a violation of either Section 79-p or Section 14-189.  The plain purpose of both statues is to prevent police from interfering with a person's ability to record policy activity.  *See, e.g., Morales v. City of N.Y.,* 2025 U.S. Dist. LEXIS 142860, at *29 (E.D.N.Y. July 25, 2025).  Plaintiff has not alleged that he attempted to record police activity by means of a video, a camera, or even a pen and paper. Instead, Plaintiff alleges that his request for identifying information either printed on a business card or written on a piece of paper was denied.  This conduct simply does not make out a violation of either right to record statute by the officers on scene, let alone Mr. Vallelong or the SBA.  In fact, in the amended complaint, Plaintiff himself pleads that he wrote down "descriptions of the officers," which he claims was "making a 'recording' in the sense of the Right to Record Acts." (¶105)  Because Plaintiff, by his own words, does not claim an impairment to his ability to record, he cannot plead a viable claim.

Recognizing this conclusion, Plaintiff in fact clarifies in the amended complaint that his Right to Record Act claim "sounds purely as a retaliation-type claim:  It is not that Defendants successfully 'prevent[ed] recording (§79-P(3)(a)(i)), but that Defendants 'threaten[ed] [Plaintiff] for recording a law enforcement activity.'  §79-P(3)(a)(ii)." (¶234)  Plaintiff's "clarification"

only confirms that he has not pled a viable Right to Record Act claim as against the SBA or Mr.

Vallelong.  Plaintiff was not stopped exiting the subway by the SBA or Mr. Vallelong, nor was

Plaintiff fired by the SBA or Mr. Vallelong.  The allegation, instead, is that the City fired him in

retaliation for reporting the incident on December 9, 2024. (¶117)  Plaintiff alleges, in

conclusory fashion, that the "City made that decision after demands and discussions with the

PBA and the SBA, which Plaintiff does not have access to." (¶118)  But that is not a theory of

retaliation; that is another unsuccessful[2] attempt to plead that the SBA and Mr. Vallelong directly

violated Plaintiff's employment rights.  Therefore, Plaintiff's "purely" retaliatory Right to

Record Act claim fails as against the SBA and Mr. Vallelong.

### POINT IV
### PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE OF CONTRACT FAILS AS AGAINST THE SBA AND MR. VALLELONG

To plausibly allege a common-law claim for tortious interference with contract, a

plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party,

(2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-

party's breach of the contract without justification, (4) actual breach of the contract . . .  (5)

damages resulting therefrom and (6) that the contract would not have been breached but for the

defendant's conduct."  *Rich v. Fox News Network, LLC*, 939 F. 3d 112, 126-127 (2d Cir. 2019)

(interna quotation marks and citations omitted); *see also Conte v. Emmons*, 895 F. 3d 168, 171

(2d Cir. 2018).

Plaintiff's claim for intentional interference with contract fails for at least three reasons.

First, Plaintiff has not alleged in his amended complaint that he entered into a contract of

---

[2] As noted above, Plaintiff's direct claim that the SBA and Mr. Vallelong violated his employment rights fails because the amended complaint is simply devoid of any specific allegations regarding any demand, statement or action by which the SBA or Mr. Vallelong attempted to get Plaintiff fired.

employment with the CCRB, much less plead the alleged contract's terms.  *See Bennett v. State Farm Fire & Cas. Co.,* 137 A.D.3d 731, 731 (1st Dep't 2016).  In fact, it appears, at best, that Plaintiff had a probationary position with the CCRB.  *See* Amended Complaint, at ¶120 (alleging that Plaintiff was fired because of his "failure to pass probation").

Second, even assuming there was a contract of employment, Plaintiff has not alleged facts from which it could be inferred that the SBA or Mr. Vallelong procured its breach.  As noted above, the amended complaint's only specific allegations concern Mr. Vallelong's statements published in the New York Post.  Those statements specifically did not call for Plaintiff's termination.  Instead, Mr. Vallelong said that "If CCRB wants to hire [Plaintiff], they should do it for another position" (¶50), *i.e.,* a position other than sitting as an investigator in a case brought against an SBA member.

Third, in the absence of an allegation that Plaintiff was contractually entitled to employment of a specific length, Plaintiff has not, and indeed cannot allege that he suffered any damages resulting from the breach of an employment contract.  *See Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 58 (2008) ("In that the length of employment is not a material term of at-will employment, a party cannot be injured merely by the termination of the contract.").

Some courts have held that where, as here, a tortious interference with contract claim is brought by an at-will employee, the claim should be brought as one alleging interference with prospective business relations.  *See, e.g., Flaherty v. Dixon,* 2023 U.S. Dist. LEXIS 26876, at *18 (S.D.N.Y. Feb. 16, 2023).  Plaintiff would fare no better if is claim were so interpreted; and indeed, in amending his complaint Plaintiff continues to frame the fifth cause of action as sounding in tortious interference with contract.

The elements of a claim for tortious interference with prospective economic relations are:

"(1) that [Plaintiff] had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party." *Stuart's, LLC v. Edelman*, 196 A.D.3d 711, 713 (2d Dep't 2021).  An at-will employee, such as the Plaintiff in the instant case, can bring a tortious interference claim if [he] can otherwise satisfy the elements of tortious interference with prospective economic relations, by alleging that "the interference . . . was accomplished by wrongful means or [that] the offending party acted for the sole purpose of harming the other party." *Id.*; *see also Miller v. Livanis*, 189 A.D.3d 446 (1st Dep't 2020).

Here, Plaintiff has not alleged that the SBA or Mr. Vallelong used wrongful means to cause the termination of Plaintiff's employment with the CCRB.  "Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone." *106 N. Broadway, LLC v. Lawrence*, 189 A.D.3d 733, 740 (2d Dep't 2020) (internal quotes and citations omitted); *see also Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980)).  Here, the only specific allegations set forth in the amended complaint concern the statements by Mr. Vallelong published in the New York Post.  There is nothing "wrongful" about those statements; indeed, as Plaintiff acknowledges, Mr. Vallelong has a First Amendment right to express his opinion.  Moreover, as further noted above, Mr. Vallelong did not even call for the termination of any business relationship between Plaintiff and the CCRB.  He said, "If CCRB wants to hire [Plaintiff], they should do it for another position." (¶50)

**Conclusion**

Plaintiff's amended complaint should be dismissed with prejudice as against defendants

SBA and Vincent Vallelong.

Dated:  White Plains, New York
        February 11, 2026

                                    Respectfully submitted,

                                    THE QUINN LAW FIRM PLLC
                                    Attorneys for SBA and Vincent Vallelong

                                    *Andrew C. Quinn*

                                    _____
                                    Andrew C. Quinn
                                    Lalit K. Loomba

                                    399 Knollwood Road, Suite 220
                                    White Plains, NY 10603
                                    (914) 997-0555
                                    lloomba@quinnlawny.com


TO: All Counsel of Record v*ia ECF*

<u>Word Count Certification</u>

The undersigned attorney hereby certifies:

Excluding the cover page and the signature block, the foregoing document contains 5,322 words.

THE QUINN LAW FIRM PLLC
Attorneys for SBA and Vincent Vallelong

*Lalit K. Loomba*

_____
Lalit K. Loomba

399 Knollwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555
lloomba@quinnlawny.com