**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RONALD DAVIDSON,<br><br>        Plaintiff,<br><br>   v.<br><br>THE CITY OF NEW YORK, JONATHAN DARCHE, SERGEANTS BENEVOLENT ASSOCIATION, VINCENT VALLELONG, POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, and PATRICK HENDRY,<br><br>        Defendants. | Case No. 1:25-cv-08065-JAV-BCM<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW OF DEFENDANTS POLICE BENEVOLENT
ASSOCIATION OF THE CITY OF NEW YORK AND PATRICK HENDRY
IN REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO AMEND**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 4

I.     PLAINTIFF'S EXTRINSIC MATTER IS NOT ENTITLED TO
CONSIDERATION ON THE MOTION TO DISMISS ................................................. 4

II.    THE COURT SHOULD DISMISS THE FAC IN FULL AGAINST THE PBA
DEFENDANTS AND DENY LEAVE TO AMEND ON FUTILITY
GROUNDS ......................................................................................................... 5

       A.    Plaintiff's Direct Discrimination And First Amendment Claims Are
Not Asserted Against The PBA Defendants ............................................. 5

       B.    All Of Plaintiff's Claims Against The PBA Defendants Are Barred By
The First Amendment/*Noerr-Pennington* .............................................. 5

       C.    Plaintiff Fails To Plead That The PBA Defendants Aided And Abetted
Any HRL Violation By The City Defendants ......................................... 10

       D.    Plaintiff Fails To Plead That The PBA Defendants Conspired With The
City Defendants To Terminate Plaintiff For Filing A CCRB Complaint ............. 15

       E.    Plaintiff Concedes The Right To Record Acts Claim Must Be
Dismissed Against The PBA, And Plaintiff's Scant Allegations
Involving Defendant Hendry Fail To Plead A Claim .............................. 19

       F.    Plaintiff Fails To Plead That The PBA Defendants Tortiously Interfered
With His At-Will Employment, And The Claim Is Time-Barred ........................ 23

CONCLUSION .................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*,
   268 A.D.2d 101, (2d Dep't 2000) ........................................................................................24

*Eaton v. Newport Bd. of Educ.*,
   975 F.2d 292 (6th Cir. 1992) ................................................................................................7

*EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*,
   147 F. Supp. 3d 63 (E.D.N.Y. 2015) ..................................................................................24

*Egan v. TradingScreen, Inc.*,
   10 Civ. 8202, 2011 WL 1672066 (S.D.N.Y. May 4, 2011)..................................................25

*Fox News Network, LLC v. Time Warner Inc.*,
   962 F. Supp. 339 (E.D.N.Y. 1997) .......................................................................................9

*Fried v. LVI Servs., Inc.*,
   10 Civ. 9308, 2011 WL 2119748 (S.D.N.Y. May 23, 2011)......................................10, 11, 26

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
   313 F. Supp. 2d 339 (S.D.N.Y. 2004).................................................................................6, 24

*FTC v. RCG Advances, LLC*,
   695 F. Supp. 3d 368 (S.D.N.Y. 2023)...................................................................................23

*Gilliam v. Greenberg Traurig LLP*,
   23-CV-06144, 2024 WL 4043348 (S.D.N.Y. Sep. 4, 2024)............................................16, 18

*Guard-Life v. Parker Hardware Mfg. Corp.*,
   50 N.Y.2d 183 (1980) ..........................................................................................................25

*Hall v. Warren*,
   21-cv-06296, 2022 WL 2356700 (S.D.N.Y. June 30, 2022)................................................18

*Hoesten v. Best*,
   34 A.D.3d 143 (1st Dep't 2006) ...........................................................................................25

*Ingrassia v. Cnty. of Sullivan*,
   262 F. Supp. 2d 116 (S.D.N.Y. 2003)...................................................................................27

*Keating v. Carey*,
   706 F.2d 377 (2d Cir. 1983)..................................................................................................18

*Krys v. Pigott*,
   749 F.3d 117 (2d Cir. 2014)....................................................................................................5

*LeBlanc-Sternberg v. Fletcher*,
    781 F. Supp. 261 (S.D.N.Y. 1991) ........................................................................9

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
    265 F.R.D. 106 (S.D.N.Y. 2010) ..........................................................................4

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
    701 F. Supp. 2d 568 (S.D.N.Y. 2010).................................................................8

*N.Y. State Nat'l Org. for Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989).............................................................................18

*Painton & Co. v. Bourns, Inc.*,
    442 F.2d 216 (2d Cir. 1971)................................................................................4

*Stachura v. Truszkowski*,
    763 F.2d 211 (6th Cir. 1985), *rev'd on other grounds*, *Memphis Cmty. Sch.
    Dist. v. Stachura*, 477 U.S. 299 (1986) ...............................................................7

*Stati v. Republic of Kazakhstan*,
    19 Misc. 382, 2024 WL 3442663 (S.D.N.Y. July 17, 2024) ...............................21

*Tarpley v. Keistler*,
    188 F.3d 788 (7th Cir. 1999) ...............................................................................7

*U.S. v. Rowlee*,
    899 F.2d 1275 (2d Cir. 1990)...............................................................................8

*Weiss v. Willow Tree Civic Ass'n*,
    467 F. Supp. 803 (S.D.N.Y. 1979) ......................................................................7

*Wieder v. Greater Hudson Valley Sys.*,
    21-cv-8026, 2024 WL 5107625 (S.D.N.Y. Dec. 13, 2024).................................13

## Statutes and Rules

42 U.S.C. §1985..............................................................................................2, 15, 17, 18

42 U.S.C. §1986..............................................................................................2, 15, 17, 18

Fed. R. Civ. P. 11.........................................................................................................10

Fed. R. Civ. P. 12.......................................................................................................4, 13

N.Y. City Admin. Code §8-107 ...................................................................................22

N.Y. City Admin. Code §14-189 ..................................................................19, 20, 21, 22

N.Y. City Admin. Code §20-918....................................................................................22

iv

N.Y. CPLR 7803 ...........................................................................................................26

N.Y. Correction Law §752 ...........................................................................................14

U.S. Const. amend. I ........................................................................................... *passim*

Case 1:25-cv-08065-JAV-BCM    Document 63    Filed 04/27/26    Page 5 of 34

The PBA Defendants respectfully submit this memorandum (i) in reply on their motion to dismiss Plaintiff's First Amended Complaint ("FAC") [Dkts. 38-39] and (ii) in opposition to Plaintiff's cross-motion for leave to file a Second Amended Complaint ("SAC") [Dkt. 57].[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition and cross-motion confirm that his claims against the PBA Defendants are devoid of factual allegations of any purported wrongdoing. Plaintiff tacitly concedes that the FAC is deficient, instead pivoting to a proposed SAC that still alleges nothing beyond constitutionally protected petitioning, and repackages speculation as conspiracy. The FAC should be dismissed with prejudice, and leave to amend should be denied as futile.

The PBA Defendants moved to dismiss the FAC, and Plaintiff cross-moved for leave to file a proposed SAC that rests entirely on interrogatory responses served by the City Defendants describing four alleged phone calls involving CCRB and the PBA/an attorney. Procedurally, the interrogatories are not entitled to consideration on the motion to dismiss the FAC. But even taken at face value for Plaintiff's cross-motion to amend, the four alleged calls amount to innocuous informational exchanges: (a) a query about CCRB's hire; (b) a call after Plaintiff sat in on an officer interview; (c) a notification that Plaintiff had been assigned as a field investigator; and (d) a post-termination notification that Plaintiff was no longer employed by CCRB. Plaintiff's proposed SAC overlays those calls with speculation "upon information and belief" that unidentified "threats" and "demands" were made, but no supporting facts are alleged.

Initially, all claims against the PBA Defendants fail as a matter of law because the only well-pled conduct is protected opinion and petitioning, squarely immunized by the First

---

[1] Capitalized terms not defined herein have the meanings given them in the PBA Defendants' opening memorandum, dated February 11, 2026 [Dkt. 39] ("PBA Mem."). "Pl. Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss and in Support of Cross-Motion to Amend, dated March 27, 2026 [Dkt. 58].

Amendment and *Noerr-Pennington*. Plaintiff's opposition relies largely on criminal cases, but here there are no well-pled allegations of criminal conduct or threats, violence, bribery, or the like to circumvent immunity for protected speech. The proposed SAC alleges exactly what *Noerr-Pennington* protects: communicating directly with a government agency on a matter of public concern. The Court need not go further to dismiss the FAC and deny leave to amend.

Plaintiff also fails to plead his claims against the PBA Defendants, and the proposed SAC does not cure these deficiencies. The HRL aiding-and-abetting claim collapses because neither the FAC nor the proposed SAC pleads direct participation by the PBA Defendants in any discriminatory act, nor a shared discriminatory intent. The phone calls described are, at most, informational and largely *post hoc*. Moreover, the HRL contemplates that advocacy about whether criminal conviction will affect public safety or job performance – all that is alleged against the PBA Defendants – is appropriate.

Plaintiff's opposition confirms that he premises his federal conspiracy claim under 42 U.S.C. §§1985/1986 on a fanciful theory of alleged retaliation for his having filed a complaint with CCRB on December 9, 2024 – 24 hours before CCRB terminated him on December 10, 2024. Plaintiff pleads no facts showing the PBA Defendants even knew about his CCRB complaint, much less that they reached an agreement to retaliate based on it within that 24-hour window. The claim also fails for lack of the requisite class-based animus. Plaintiff's opposition contrives a new theory of alleged discrimination based on "political association," but no such theory is pled. Plaintiff does not even identify his political party, nor allege the PBA Defendants' awareness of such matter.

Plaintiff expressly abandons any Right to Record Acts claim against the PBA as an entity. The lone allegation against Defendant Hendry – his comment on behalf of the union to the

*NY Post* – could not possibly constitute "interference" with Plaintiff's alleged recording that occurred weeks later. Moreover, Plaintiff's theory of off-duty, post-recording "retaliation," even if properly pleaded – which it has not been – falls outside the plaint text of the Right to Record Acts.

Finally, Plaintiff's tortious interference claim runs headlong into First Amendment/*Noerr-Pennington* immunity, as Plaintiff ignores multiple cases cited by the PBA Defendants that similarly dismissed tortious interference claims premised on government petitioning. The claim independently fails for failure to plead the elements, including the heightened requirement for an at-will/probationary employee to show wrongful means or malice. Plaintiff is forced to concede that his only argument to attempt to satisfy this element – that the PBA Defendants purportedly had "discriminatory" intent – has no support under New York law. In fact, one of the very cases Plaintiff cites expressly rejected his argument. New York law also forecloses Plaintiff's attempt to circumvent the four-month Article 78 limitations period simply by claiming that he seeks damages not reinstatement.

For all of these reasons, amendment with the proposed SAC would be futile: the proposed SAC's new allegations add four innocuous calls that only reinforce the First Amendment/*Noerr-Pennington* bar and do not cure any of the pleading deficiencies identified in this motion. The Court should dismiss the FAC against the PBA Defendants in its entirety, and deny leave to amend.

3

## ARGUMENT

I. **PLAINTIFF'S EXTRINSIC MATTER IS NOT ENTITLED TO CONSIDERATION ON THE MOTION TO DISMISS**

Tacitly acknowledging that the FAC fails to state a claim against the PBA Defendants, Plaintiff's opposition relies on matter extrinsic to the FAC, but that matter is not entitled to consideration on the motion to dismiss.

Namely, Plaintiff's opposition relies on interrogatory responses from the City Defendants, containing innocuous allegations of four purported phone calls between Darche and the PBA or a third party alleged to be the PBA's counsel [Dkt. 59-1] ("City Interrogatories").[2] For purposes of opposing the motion to dismiss, however, Plaintiff is limited to factual allegations in the FAC, any documents attached to or incorporated by reference in the FAC, or matters of judicial notice. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010). The City Interrogatories do not fall into any of those categories, and Plaintiff does not argue otherwise. The City Interrogatories and the matter alleged therein cannot be considered on the motion to dismiss because "a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss."[3] *Id.* at 122-23; *see also* FRCP 12(d).

---

[2] The third party, Stuart London, was not in fact the PBA's counsel, but that is not material to the resolution of this motion.

[3] To the extent Plaintiff is arguing that the parties' Pre-Conference Statement somehow authorized Plaintiff to submit extrinsic matter in opposition to the PBA Defendants' motion to dismiss, such argument is meritless. *See* Pl. Mem. 6 (citing Dkt. 31 at 3). The parties proposed an initial phase of discovery to facilitate Plaintiff's evaluation of whether he is going to continue to pursue some or all of his claims, which resulted in Plaintiff voluntarily dismissing the SBA Defendants. Dkt. 54. The parties did not purport to waive the procedures of FRCP 12. *See Painton & Co. v. Bourns, Inc.*, 442 F.2d 216, 233 n.16 (2d Cir. 1971) (holding that rights under FRPC were not waived in absence of "explicit waiver").

Moreover, as discussed below, the SAC does not cure any of the deficiencies with Plaintiff's claims against the PBA Defendants, and thus not only should the Court dismiss the FAC, but it should deny leave to amend on futility grounds. *See Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) ("Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted.").

## II.    THE COURT SHOULD DISMISS THE FAC IN FULL AGAINST THE PBA DEFENDANTS AND DENY LEAVE TO AMEND ON FUTILITY GROUNDS

### A.    Plaintiff's Direct Discrimination And First Amendment Claims Are Not Asserted Against The PBA Defendants

Plaintiff's argument that "no Defendant moves to dismiss" Plaintiff's direct discrimination and First Amendment claims (Pl. Mem. 8), is misleading, because the FAC does not assert those claims against the PBA Defendants (nor does the proposed SAC). Plaintiff's First Amendment claim is in the First Cause of Action, which is asserted only "Against Defendants City and Darche." FAC, First Cause of Action. Plaintiff's direct discrimination claim, asserted in the Second Cause of Action, is asserted only against "Defendant City," whereas Plaintiff alleges that "the other Defendants aided and abetted that violation." *Id.* ¶220.

The PBA Defendants' motion addresses all claims asserted against the PBA Defendants, demonstrating why all such claims should be dismissed. The PBA Defendants' motion does not address claims that are not asserted against the PBA Defendants, as those claims are a matter between Plaintiff and the City Defendants. As such, the PBA Defendants' motion warrants dismissal of the FAC in its entirety against the PBA Defendants.

### B.    All Of Plaintiff's Claims Against The PBA Defendants Are Barred By The First Amendment/*Noerr-Pennington*

Plaintiff's only well-pled allegations against the PBA Defendants amount to an opinion about the effects of a City agency's hiring of a public employee on fairness for police officers

5

and public safety or, at most, advocacy to a City agency regarding the hiring of the public employee. Plaintiff cannot seriously dispute that such opinion and advocacy on a matter of public concern – whether asserted in a newspaper article or to the City agency itself – is protected by the First Amendment/*Noerr-Pennington*. PBA Mem. 9-11.

Initially, Plaintiff falsely argues that the PBA Defendants' First Amendment/*Noerr-Pennington* argument is limited to the comment in the *NY Post* article, whereas Plaintiff asserts that his claims are based on "private communications between City Defendants and PBA Defendants." Pl. Opp. 27. In fact, the PBA Defendants argued that, putting aside the article, Plaintiff's conclusory allegations of "pressure" to the City Defendants "would similarly be protected under the First Amendment, not only as opinion, but under the right to petition," and "lobbying the government on behalf of a union of government employees (police officers) relating to the functioning of a government agency (CCRB) is protected by the First Amendment," citing *Noerr-Pennington* and other cases on point. PBA Mem. 10-11; *see also id.* 21-22. Such alleged "attempts to influence governmental action" are precisely what the *Noerr-Pennington* doctrine was promulgated to protect. *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004).

Plaintiff's argument that he can rely on the *NY Post* article as evidence of intent without offending the First Amendment does not help Plaintiff either. Putting aside that the article does not show any improper intent for reasons explained in the PBA's opening memorandum (PBA Mem. 13-14) and herein, "the protection of the First Amendment does not depend on 'motivation'; it depends on the nature of the defendant's conduct," and the First Amendment protects "the advancement of beliefs and ideas, however unpalatable the ideas or whatever the

6

underlying motive." *Weiss v. Willow Tree Civic Ass'n*, 467 F. Supp. 803, 817, 818 (S.D.N.Y. 1979).

Thus, to the extent Plaintiff is arguing that First Amendment rights can be trampled simply by alleging discriminatory intent, the case law squarely rejects such an argument, dismissing discrimination and civil rights claims where, as here, the allegations constitute government petitioning. *See id.* at 807, 816-19 (dismissing civil rights claims where plaintiffs alleged that defendants conspired to "pressure town officials" to deny development application from a congregation of Hasidic Jews); *Stachura v. Truszkowski*, 763 F.2d 211, 213 (6th Cir. 1985), *rev'd on other grounds*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) (where teacher alleged that his discharge resulted from a conspiracy to violate his First Amendment rights, holding that citizen who was "responsible for starting the sequence of events" that led to teacher's discharge was immune, because "[a]lthough [her] role was pivotal in initiating these protests, it was made to the public body having charge of the educational system in the community concerned"); *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999) (where plaintiff alleged he was denied employment with state due to his political affiliation, members of opposing party were immune because "parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others").

*Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992), is also on point. In *Eaton*, a discharged school principal sued a union and its managing agent, alleging a conspiracy with the board of education to violate his due process rights, arising from the union's labeling of the principal as a racist and urging his dismissal. *Id.* at 296. The Court held that the claims against the union and its managing agent were barred by the First Amendment/*Noerr-Pennington*,

7

holding that the union's "personal motivation" was "irrelevant" and "what [plaintiff] attempts to characterize as a conspiracy is more accurately and commonly known as free expression and political organizing." *Id.* at 297. The Court held that "[a] citizen's right to petition is not limited to goals that are deemed worthy, and the citizen's right to speak freely is not limited to fair comments." *Id.* at 298.

Plaintiff's argument, relying on criminal cases, that "the PBA Defendants incited violations of the law, which took place imminently" (Pl. Mem. 27), is also meritless. There is no civil cause of action for "incitement."[4] Moreover, Plaintiff's theory runs headlong into First Amendment/*Noerr-Pennington* immunity, because, as the cases cited above demonstrate, even if Plaintiff alleged facts to show that the PBA Defendants "pressured" or "incited" action by CCRB – which he has not done – a private party has a constitutional right to petition the government to take preferred action. CCRB possessed ultimate decision-making and control over Plaintiff's employment.

Putting aside the inapposite criminal cases Plaintiff cites, the other cases Plaintiff cites support dismissal or are distinguishable. The case cited by Plaintiff, *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568 (S.D.N.Y. 2010), undercuts Plaintiff's claims, because that case granted a motion to dismiss civil rights claims based on First Amendment/*Noerr-Pennington* immunity. In *Mosdos*, a Jewish community alleged religious discrimination based on a legal challenge to its proposed housing project. In holding that *Noerr-Pennington* immunity applies to civil rights claims, the Court held that "a plaintiff's assertion,

---

[4] The "incitement" doctrine that Plaintiff refers to involves "criminal syndicalism statutes which, by definition, deal with the teaching and promoting of terrorism, force and violence for the purpose of accomplishing political or industrial change." *U.S. v. Rowlee*, 899 F.2d 1275, 1277 n.1 (2d Cir. 1990).

for example, of a violation of his or her constitutional right to be free from discrimination does not by itself strip a defendant of its First Amendment right to petition." *Id.* at 596; *see also id.* at 600 ("the fact that speech is allegedly motivated by or may have overtones of discriminatory animus does not generally strip away the speaker's First Amendment rights"). While the Court recognized a "sham" exception to the *Noerr-Pennington* doctrine, Plaintiff does not and cannot argue that the sham exception applies here. It is limited to frivolous use of a governmental process – *e.g.*, bringing a frivolous lawsuit – to harm the target of that process. *Id.* at 602. No governmental process such as commencement of a lawsuit by the PBA Defendants is at issue here, let alone any basis to allege frivolousness. Advocating for fairness for police officers and public safety is a legitimate public interest.[5]

The FAC makes conclusory, generalized allegations that the PBA Defendants "pressured" CCRB that, even if considered – which they should not be – suggest nothing outside the normal, everyday political process of petitioning a government body for a preferred outcome. Accordingly, the Court should dismiss the FAC due to First Amendment/*Noerr-Pennington* immunity.

Additionally, the Court should deny Plaintiff's cross-motion to amend, because the proposed SAC similarly does not allege any conduct by the PBA Defendants that would fall outside First Amendment/*Noerr-Pennington* immunity. All that changed between the FAC and

---

[5] Plaintiff's cases *LeBlanc-Sternberg v. Fletcher*, 781 F. Supp. 261 (S.D.N.Y. 1991), and *Fox News Network, LLC v. Time Warner Inc.*, 962 F. Supp. 339 (E.D.N.Y. 1997), are distinguishable. *LeBlanc-Sternberg* was not about using speech to petition the government, but rather a unique fact pattern of citizens incorporating a village to exclude Orthodox Jews from the community. 781 F. Supp. at 264. *Fox News* involved detailed factual allegations demonstrating a conspiracy between Fox News and the City to condition approval of the then-pending Time Warner/Turner Media merger on Time Warner's agreement to carry Fox News as a cable channel. 962 F. Supp. at 344.

the proposed SAC is the allegation of four phone calls between Darche and the PBA/London. SAC ¶113. The proposed SAC does nothing to support a plausible inference of any criminal, violent, or threatening conduct by the PBA Defendants, and thus falls far short of alleging any conduct outside First Amendment/*Noerr-Pennington* immunity. Nor do the new allegations even demonstrate any conspiratorial agreement.

Plaintiff adds his own fictionalization to these innocuous allegations by asserting that "[u]pon information and belief, during those phone calls, PBA Defendants communicated threats and demands that Plaintiff be terminated, and the City Defendants made repeated concessions, ultimately leading to an agreement that Plaintiff be terminated" (*id.* ¶114), but that conclusory allegation is not entitled to consideration (and pushes FRCP 11 ethical boundaries). The proposed SAC does not allege any facts to support that conclusory assertion. No threats, demands, or agreement are identified. And, according to Plaintiff's own allegations in the proposed SAC, there was no communication between CCRB and the PBA Defendants regarding Plaintiff's termination until CCRB notified the PBA *after the fact*. SAC ¶113.

Accordingly, the Court should deny leave to amend as futile because the proposed SAC does not allege any basis to avoid First Amendment/*Noerr-Pennington* immunity.

### C.    Plaintiff Fails To Plead That The PBA Defendants Aided And Abetted Any HRL Violation By The City Defendants

Plaintiff cannot dispute well-settled New York law that an HRL aiding and abetting claim requires two elements: (i) the defendant "must have actually participated in the conduct giving rise to the claim of discrimination and engaged in direct, purposeful participation"; and (ii) the aider and abettor must "share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." PBA Mem. 12. In fact, the case Plaintiff primarily relies on, *Fried v. LVI Servs., Inc.*, 10 Civ. 9308, 2011 WL 2119748, at *7

10

(S.D.N.Y. May 23, 2011), sets forth the same standard, and *dismissed* the aiding and abetting claim where the allegations were similarly conclusory. Neither the FAC nor the proposed SAC alleges well-pled facts to satisfy either element.

Initially, Plaintiff's argument that the lack of allegations in the FAC showing any actual, direct participation by the PBA Defendants in CCRB's termination of Plaintiff is "a moot point" based on the City Interrogatories (Pl. Mem. 12) is meritless because, as set forth in Part I above, the City Interrogatories are not entitled to consideration on the motion to dismiss.

Plaintiff attempts to salvage the FAC in a footnote by asserting that "it was plausible Darche was not lying in his extensive descriptions of the 'heat' and 'pressure' the PBA was putting on him to fire Plaintiff" (*id.* at 12 n.7), but that is a mischaracterization of the FAC's allegations (and is not supported by the proposed SAC either). The alleged statements by Darche do not: identify the PBA as the source of any such purported "heat" or "pressure" (as opposed to, for example, other unions, the Mayor's Office, CCRB board members, the media, the public); indicate what such purported "heat" or "pressure" entailed; or claim that the PBA Defendants asked CCRB "to fire Plaintiff." FAC ¶¶64-90. In all events, asking a City agency for an outcome would not constitute "aiding and abetting," and Plaintiff does not cite any case otherwise.

Tacitly acknowledging that Plaintiff cannot satisfy the direct participation element, Plaintiff argues that "the statute includes actions that 'compel' or 'coerce' discrimination." Pl. Mem. 12 (quoting HRL §296(6)). But, under New York law, including the *Fried* case on which Plaintiff relies, direct participation is a required element for any HRL aiding and abetting claim. There is no separate or lesser standard based on a "compel" or "coerce" theory. Again, Plaintiff does not cite any case in support of his argument.

Plaintiff fares no better with the proposed SAC, which actually undermines any notion of direct participation by the PBA Defendants in CCRB's termination of Plaintiff. The four alleged phone calls reflect, at best, exchanges of information. The provision of information is not direct participation in a discriminatory action. Otherwise, anybody who reported on the fact of Plaintiff's conviction would be liable for aiding and abetting.

Moreover, the proposed SAC's allegations do not show that the PBA Defendants were involved in *any* communication relating to Plaintiff's termination before CCRB decided to take that action. The allegations undermine any direct participation by the PBA Defendants in the termination because, from the time in "November or December 2024" when Darche allegedly told the PBA or London that CCRB assigned Plaintiff to field investigator, there was no further communication until *after* CCRB terminated Plaintiff and so notified the PBA. SAC ¶113. The proposed SAC alleges no facts to show how the PBA Defendants could have participated in a CCRB employment decision that the PBA Defendants had no control over and did not even learn about until after the fact.

Plaintiff argues that "the PBA Defendants' advocacy continued even after Plaintiff was moved to a different role at their demand" (Pl. Mem. 11 n.6), but that is just lawyer's *ipse dixit* that has no support in the FAC and is contradicted by the proposed SAC. And, of course, no well-pled allegations show that CCRB's assignment of Plaintiff was "at [the PBA's] demand." *Id.* According to the proposed SAC, the only communication on that topic occurred *after* CCRB made that assignment. SAC ¶113.

Unable to show participation in Plaintiff's termination, Plaintiff's opposition contrives a new theory that "even advocating for Plaintiff to have 'significantly diminished material responsibilities' because of his criminal conviction was an attempt to coerce an adverse

12

employment action and therefore a violation of the NYSHRL." Pl. Mem. 11-12 n.6 (quoting *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 304 (2d Cir. 2017)). This new theory is meritless for multiple reasons. First, this theory is not pleaded in the FAC or the proposed SAC, both of which premise the HRL claim on Plaintiff's termination. *See* FAC ¶¶218, 224; SAC ¶¶225, 231. Second, Plaintiff expressly alleges that "Plaintiff agreed" to his assignment to field investigator. FAC ¶72; SAC ¶74. Plaintiff cannot complain about an assignment he agreed to. *See Wieder v. Greater Hudson Valley Sys.*, 21-cv-8026, 2024 WL 5107625, at *6 (S.D.N.Y. Dec. 13, 2024) ("[Plaintiff] cannot now seek to recharacterize a voluntary choice . . . as an adverse employment action simply because she wishes to bring forward a Title VII claim."). Third, putting aside Plaintiff's agreement to the position, Plaintiff does not show that assignment to field investigator was an adverse employment action. Indeed, Plaintiff alleges that Darche assured him that, no matter what, Plaintiff would receive "'100%' the same pay," and Plaintiff's title would remain as "investigator." FAC ¶¶73, 74; SAC ¶¶74, 75. Fourth, in all events, Plaintiff does not allege any direct participation by the PBA Defendants in CCRB's assignment decision either. The FAC contains no such allegations, and the proposed SAC alleges that the only communication regarding Plaintiff's assignment occurred *after the fact*. SAC ¶113.

The Court should dismiss the aiding and abetting claim without leave to replead, because neither the FAC nor the proposed SAC pleads direct participation by the PBA Defendants in the alleged discriminatory action (*i.e.*, Plaintiff's termination). But Plaintiff also fails to satisfy the discriminatory intent element. Plaintiff relies on the PBA's comment to the *NY Post* to show purported intent, and spends considerable effort trying to justify rewriting what the comment actually said. Pl. Mem. 3 n.2. Contrary to Plaintiff's argument, FRCP 12(b)(6) pleading standards do not authorize Plaintiff to rewrite a document that speaks for itself. The comment

expressed a constitutionally protected opinion that: "If this individual has any role in CCRB investigations, it not only jeopardizes our members' rights – it puts public safety at risk. It's up to the NYPD to ensure that doesn't happen." FAC ¶52. In attempting to contort the meaning of "investigations" and "NYPD," Plaintiff misses a central point: the comment makes clear that the intent was to protect officer rights and public safety – a lawful, constitutionally protected opinion.

Moreover, contrary to Plaintiff's attempt to mischaracterize the PBA Defendants' argument, it is not the PBA Defendants' burden to establish that the City Defendants' termination of Plaintiff was authorized by Correction Law §752 (Pl. Mem. 3 n.2), which permits lawful denial of employment where the criminal offense had "a direct relationship" with the employment or "continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." The point that Plaintiff ignores is that the PBA's advocacy about fairness and safety presented concerns that the legislature expressly deemed legitimate under the applicable statute, and thus does not constitute discriminatory intent. It was up to CCRB to do with that information as it saw fit. Whatever reason(s) CCRB ultimately had for terminating Plaintiff, whether premised on §752 or not, the PBA was within the contours of the state law (and the First Amendment) to advocate the PBA's opinion about the perceived effects of Plaintiff's involvement in CCRB investigations on officer fairness and public safety.

Accordingly, the Court should dismiss the FAC's aiding and abetting claim and deny leave to amend. Plaintiff fails to allege that the PBA Defendants directly participated in CCRB's termination of Plaintiff that the PBA Defendants did not even learn about until after the fact. And

14

there is nothing discriminatory or wrongful about advocating for officer fairness and public safety.

**D. Plaintiff Fails To Plead That The PBA Defendants Conspired With The City Defendants To Terminate Plaintiff For Filing A CCRB Complaint**

Plaintiff does not dispute that there can be no federal conspiracy claim premised on his criminal conviction because criminal history is not a federally-protected class, nor can Plaintiff premise a federal conspiracy claim on an alleged violation of state law. PBA Mem. 16, 17. Rather, Plaintiff's opposition confirms that his conspiracy claim under 42 U.S.C. §§1985/1986 relies on the theory that the PBA Defendants conspired with the City Defendants to retaliate against Plaintiff for filing a CCRB complaint. This claim fails for numerous reasons (PBA Mem. 16-18), and the proposed SAC does not cure any of these deficiencies.

Initially, Plaintiff's argument that the PBA Defendants' motion "fail[s] to even acknowledge, let alone address this theory" (Pl. Mem. 13) is baseless. The PBA Defendants expressly addressed Plaintiff's theory of retaliation premised on his CCRB complaint commencing at the bottom of page 16 of the PBA Defendants' opening memorandum through page 18.

First, neither the FAC nor the proposed SAC pleads any facts to plausibly show that the PBA Defendants were even aware of Plaintiff's CCRB complaint, which is fatal to Plaintiff's theory. Absent facts showing that the PBA Defendants were aware of Plaintiff's CCRB complaint at any relevant time, the PBA Defendants could not possibly have conspired to retaliate against Plaintiff based on that CCRB complaint. The Proposed SAC undermines, rather than helps, Plaintiff's theory. Plaintiff alleges that he filed his CCRB complaint on December 9, 2024, and CCRB terminated him on December 10, 2024. FAC ¶¶ 91-106, 117; SAC ¶¶94-109, 122. Even according to the new allegations in the proposed SAC, there was no communication

15

between the PBA Defendants and the City Defendants between December 9, 2024, and Plaintiff's termination. SAC ¶113.

Plaintiff's only argument on this point – that, "[a]ccording to Darche, things were on track until Plaintiff filed the CCRB report," citing FAC ¶¶89-90 (Pl. Mem. 15) – mischaracterizes Plaintiff's pleading and, in all events, does not remotely show any knowledge by the PBA Defendants of Plaintiff's CCRB complaint. The allegations Plaintiff cites refer to an alleged December 6, 2024, conversation between Plaintiff and Darche that pre-dated, and had nothing to do with, Plaintiff's CCRB complaint. FAC ¶¶89-90. The mere sequence of events that CCRB terminated Plaintiff at a point in time after Plaintiff filed his CCRB complaint does not support a plausible inference relating to *the PBA Defendants*. Plaintiff's speculation is deficient under any pleading standard, and particularly given that, as Plaintiff does not dispute, "[a] constitutional conspiracy claim must be pled with at least some degree of particularity." PBA Mem. 16 n.8.

Second, for similar reasons, Plaintiff fails to plead the requisite agreement with CCRB to retaliate against Plaintiff based on the CCRB complaint or otherwise. The FAC does not allege any communication, let alone agreement, between the PBA and CCRB at all. Moreover, none of the newly-alleged phone calls in the proposed SAC plausibly shows that any agreement with CCRB was made at any point regarding any matter – instead showing only informational updates. Indeed, lacking any allegations showing any communication between the PBA Defendants and CCRB between the time of Plaintiff's December 9, 2024, CCRB complaint and CCRB's termination of Plaintiff on December 10, 2024, the proposed SAC actually undermines the hypothetical notion that the PBA Defendants somehow conspired with CCRB during that 24-hour period. The case Plaintiff cites, *Gilliam v. Greenberg Traurig LLP*, 23-CV-06144, 2024

16

WL 4043348, at *3 (S.D.N.Y. Sep. 4, 2024), supports dismissal here, because the Court

*dismissed* the §1985 conspiracy claim for failure to plausibly show an agreement. On point here,

the Court held that the plaintiff could not rely on hypothetical allegations of communications

between the defendants to satisfy the agreement element, because a plaintiff "cannot use any

hypothetical allegations to nudge his claims across the line from conceivable to plausible." *Id.*

(internal quotes omitted).

Finally, Plaintiff does not dispute that for an alleged conspiracy to be actionable under 42

U.S.C. §§1985/1986, "the conspiracy must also be motivated by some racial or perhaps

otherwise class-based, invidious discriminatory animus." PBA Mem. 18. This class-based

discriminatory intent element is lacking in both the FAC and the proposed SAC. Plaintiff's

opposition contrives a new theory that the PBA Defendants purportedly "targeted" Plaintiff

"because of his political associations and his demonstrated commitment to opposing police

misconduct."[6] Pl. Mem. 13. Plaintiff does not allege any "political association" in the FAC or the

proposed SAC, however. He does not allege whether he is a Democrat, Republican, or some

other political party. Nor does Plaintiff allege that the PBA Defendants were aware of his

unidentified "political association," let alone that they purportedly discriminated against him on

that basis. Moreover, "demonstrated commitment to opposing police misconduct" (*id.*) is not a

protected class. And, again, Plaintiff does not allege any basis to plausibly show that the PBA

Defendants were even aware of his CCRB complaint.

---

[6] Plaintiff again mischaracterizes the PBA Defendants' motion by arguing that "[w]ithout any argument on these sorts of conspiracies, Defendants cannot make one for the first time in reply." Pl. Mem. 14. The PBA Defendants expressly argued that "Plaintiff's theory premised on his CCRB complaint does not satisfy" the class-based discrimination requirement. PBA Mem. 17. Moreover, the PBA Defendants were not required to foresee a new "political association" theory that is found nowhere in the FAC or the proposed SAC.

The cases Plaintiff cites undermine his argument, because Plaintiff's theory falls far short of the types of alleged class-based discrimination at issue in those cases. *See N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir. 1989) (alleged discrimination against a class of women; holding that "[d]istinctions based upon immutable characteristics such as sex have long been considered invidiously discriminatory"); *Keating v. Carey*, 706 F.2d 377, 379 (2d Cir. 1983) (holding "that Republicans are a protected class for the purpose of §1985(3)"). In the other case Plaintiff cites, *Hall v. Warren*, 21-cv-06296, 2022 WL 2356700, at *10, *11 (S.D.N.Y. June 30, 2022), the plaintiffs' federal conspiracy claim was premised on a well-pled equal protection claim. The plaintiffs were a group of protesters in the City of Rochester who alleged they were treated differently by the city and county from other similarly-situated protesters based on the content of their message. Here, Plaintiff does not allege an equal protection claim. Nor does he identify anything about the content of his CCRB complaint that caused him to be treated differently from the thousands of other individuals who file complaints with CCRB each year. *Cf. Gilliam*, 2024 WL 4043348, at *4 ("Plaintiff does not allege that Defendants' conspiracy to prevent him from sitting for the New York bar exam is in any way motivated, or even related to, his inherited or immutable characteristics." (internal quotes omitted)).

Accordingly, the Court should dismiss Plaintiff's conspiracy claim under 42 U.S.C. §§1985/1986, and deny leave to replead on futility grounds, since the proposed SAC, like the FAC, does not plausibly show that the PBA Defendants: (i) were even aware of Plaintiff's CCRB complaint at any relevant time; (ii) made an agreement with CCRB in relation to that CCRB complaint or otherwise; or (iii) were motivated by class-based discrimination.

18

**E.**     **Plaintiff Concedes The Right To Record Acts Claim Must Be Dismissed Against The PBA, And Plaintiff's Scant Allegations Involving Defendant Hendry Fail To Plead A Claim**

Although the FAC and proposed SAC assert a claim under the Right to Record Acts "Against All Defendants" (Fourth Cause of Action), Plaintiff states that he "does not make Right to Record Act claims against the PBA as a corporation directly." Pl. Mem. 20 n.12. Accordingly, the Court should dismiss this claim, with prejudice, against the PBA. The Court should also dismiss this claim against Defendant Hendry (PBA Mem. 19-20), and deny leave to amend, because: (i) the *only* alleged conduct by Hendry is providing the comment to the *NY Post*, well before Plaintiff's alleged recording; and (ii) the proposed SAC cannot cure the fact that the Right to Record Acts by their plain language do not apply to Plaintiff's theory of post-recording "retaliation."

The Court should dismiss the Right to Record Acts claim against Hendry at the threshold because neither the FAC nor the proposed SAC pleads any conduct by Hendry other than providing the comment to the *NY Post*. FAC ¶¶51-52; SAC ¶¶52-53. That comment, published on November 27, 2024, could not have constituted "interference" with an alleged "recording" that occurred almost two weeks later on December 9, 2024. FAC ¶91; SAC ¶94. No other conduct by Hendry is alleged.[7]

Plaintiff argues that "by retaliating for Plaintiff's CCRB complaint, Hendry was (among other things) 'threatening or making any effort to intimidate a person recording police activities.'" Pl. Mem. 21 (quoting Admin. Code §14-189(c)(1)(b)). But Plaintiff ignores that

---

[7] While the FAC should be dismissed without leave to replead against both of the PBA Defendants for all of the reasons set forth in this motion, Hendry should be dismissed with prejudice for the independent reason that neither the FAC nor the proposed SAC alleges that he did anything other than provide the comment to the *NY Post*.

neither the FAC nor the proposed SAC pleads any facts to show that Hendry was even aware of Plaintiff's CCRB complaint before Plaintiff filed this lawsuit. Nor are there any allegations that Hendry engaged in any conduct or communication with respect to Plaintiff other than the comment to the *NY Post* almost two weeks before Plaintiff's CCRB complaint. There are certainly no allegations to support Plaintiff's reckless argument that Hendry "threaten[ed]" or "intimidate[d]" Plaintiff.[8]

The Court should dismiss Plaintiff's Right to Record Acts claim for the additional reason that Plaintiff's theory that Hendry retaliated against him for filing his CCRB complaint, in addition to lacking factual allegations, is outside the scope of the Right to Record Acts. PBA Mem. 19-20. First, Plaintiff concedes, as he must, that the statutes are limited to interference with recording by an "officer." Admin. Code §14-189(c)(1).[9] Although Hendry, the President of the PBA, is a police officer, Plaintiff does not allege any conduct by him in his capacity as a police officer. Rather, the *only* factual allegation in the FAC or the proposed SAC involving Hendry is his provision of the comment, as President of the PBA, to the *NY Post*. FAC ¶¶51-52; SAC ¶¶52-53. Plaintiff does not cite any authority in the statutory text or case law to expand the Right to Record Acts to a union president or anybody else acting outside the capacity of a police officer.

---

[8] Plaintiff argues that "[t]he FAC plausibly pleads that the individual officers who were the subject of Plaintiff's Report, for example, or still other people at the PBA, were involved in taking adverse actions against Plaintiff because of the Report." Pl. Mem. 23. Neither the FAC nor the proposed SAC contains any facts to support yet another new theory asserted for the first time in Plaintiff's opposition. Plaintiff does not allege that anybody outside CCRB was aware of his CCRB complaint.

[9] Citations herein are to the City statute because Plaintiff focuses on the City statute in his opposition while essentially inviting the Court to dismiss his claim under the State statute. Pl. Mem. 22 n.13. For the avoidance of doubt, however, all of the arguments set forth in this motion also apply under the State statute, and thus the Court should dismiss the Fourth Cause of Action against the PBA Defendants in full. PBA Mem. 19-20.

Plaintiff acknowledges that he does not allege any conduct by Hendry in his capacity as a police officer, instead arguing "it does not matter if he is off-duty." Pl. Mem. 21. The statute says nothing about including individuals acting in an off-duty, non-law enforcement capacity, however. Moreover, reading "off-duty" into the statute to expand its scope would violate rules of statutory construction. When the New York City Council intends a statute to cover off-duty police officers, it says so explicitly. In particular, City Charter §441, adopted by the City Council in 2021 (effective Jan. 2022), within a year of the Right to Record Act, grants CCRB power to investigate past conduct of police officers when they have been found to have engaged in an act of bias "regardless of whether such member was on or off duty when engaging in such act." Charter §441(b)(1). If the City Council's reference to police officers in itself included off-duty conduct, as Plaintiff argues here, the language in Charter §441(b)(1) expressly including "off duty" conduct within that statute's scope would have been superfluous. Rather, the City Council's express inclusion of off-duty conduct in Charter §441 but not in the Right to Record Act "indicates that the omission was intentional." *Stati v. Republic of Kazakhstan*, 19 Misc. 382, 2024 WL 3442663, at *7 (S.D.N.Y. July 17, 2024) (internal quotes omitted)).[10]

Second, the Right to Record Acts are also inapplicable because they only apply where "an officer interfered with such person's recording of police activities," Admin. Code §14-189(c)(1), but Plaintiff does not dispute that he completed his purported recording (*i.e.*, taking notes of his encounter and filing a CCRB complaint), and there was no interference with such

---

[10] Plaintiff's speculation that "by participating in retaliation for recording official activity, it is plausible that Hendry was exercising some part of his cloak of state power" (Pl. Mem. 22) should not be considered. Plaintiff does not allege any facts showing "participat[ion] in retaliation" by Hendry, and thus Plaintiff also has not alleged that any such nonexistent conduct somehow included a "cloak of state power."

purported recording.[11] Plaintiff instead is admittedly seeking to premise his Right to Record Acts claim on alleged "retaliation" occurring after the fact. Pl. Mem. 23. In addition to the fact that Plaintiff has failed to allege any such purported retaliation by Hendry, Plaintiff's post-recording retaliation theory is not encompassed by the statute. Indeed, the only provision of the statute on which Plaintiff relies – "threatening or making any effort to intimidate a person recording police activities" (Admin. Code §14-189(c)(1)(b)), speaks only of "recording" in the present tense – *i.e.*, the alleged threat or intimidation occurring simultaneously in time with "a person recording police activities." In contrast, Plaintiff notes that a *different* clause of the statute applies to "stopping, seizing, searching, issuing any summons, or arresting any individual because such individual recorded police activities" (*id.* §189(c)(1)(c) (Pl. Mem. 23-24), which includes the past tense "recorded." But Plaintiff does not invoke that provision as a basis for his claim. FAC ¶234; SAC ¶241.

Plaintiff also makes up a generalized argument that "'interference' with a right includes retaliation for its exercise." Pl. Mem. 24. Plaintiff cites no New York authority for that proposition, and it is demonstrably false. When the City Council intends to address retaliation, it says so using the term "retaliation," and it addresses "retaliation" as a separate concept from "interference." For example, Admin. Code §8-107, barring certain unlawful discriminatory practices, has a provision prohibiting "Interference with protected rights" (subsection 19), and a separate provision prohibiting "Retaliation" (subsection 7). Similarly, Admin Code §20-918, providing for paid safe/sick time for employees, is titled "Retaliation and interference

---

[11] The PBA Defendants dispute that filing a CCRB complaint is a "recording" within the meaning of the Right to Record Acts, but their motion does not rely on that point because the claim fails for the other reasons set forth herein. The PBA Defendants, however, join in any arguments made by City Defendants in this regard. Dkt. 38.

22

prohibited," and it, too, has separate language prohibiting interference and retaliation. As such, the statutory term "interference" does not encompass retaliation, and when the legislature intends to encompass retaliation, it says so. Plaintiff's reliance on the federal Family Medical Leave Act (FMLA) is unhelpful (Pl. Mem. 24), because the FMLA is not at issue here.

The legislative history does not support Plaintiff's effort to rewrite the statute either. "[L]egislative history cannot alter the meaning of the plain text," *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 390 (S.D.N.Y. 2023), which, as relevant here, speaks to recording in the present tense and says nothing about retaliation. And even if the legislative history that Plaintiff cites were considered, it also says nothing about including post-recording alleged retaliation within the scope of the statute.[12] Pl. Mem. 22.

Accordingly, the Court should dismiss, with prejudice, the Right to Record Acts claim against the PBA since Plaintiff abandons that claim. Additionally, the Court should dismiss this claim against Hendry and deny leave to amend, because: (i) the scant allegations pertaining to Hendry in the FAC and proposed SAC do not show that he was even aware of Plaintiff's CCRB complaint, let alone interfered with same; and (ii) Plaintiff's off-duty, post-recording retaliation theory falls outside the scope of the Right to Record Acts.

### F. Plaintiff Fails To Plead That The PBA Defendants Tortiously Interfered With His At-Will Employment, And The Claim Is Time-Barred

Plaintiff does not dispute that his tortious interference claim is subject to the heightened wrongful means/malice requirement given that Plaintiff expressly pleads that he was a probationary employee (FAC ¶39; SAC ¶39), and even his offer letter confirms his employment

---

[12] Plaintiff's argument that "[i]f officers could simply step off duty to retaliate against people who recorded, the Acts would do little" (Pl. Mem. 22) is meritless. There is no indication from the statutory text or legislative history that the City or State legislatures had such an implausible hypothetical on their minds when they enacted the Right to Record Acts.

had no fixed term [Dkt. 59-5]. Plaintiff fails to refute any of the multiple grounds for dismissal of this claim as against the PBA Defendants: (i) First Amendment/*Noerr-Pennington* immunity; (ii) Plaintiff fails to plead facts to plausibly show that the PBA Defendants were a "but for" cause of his termination; (iii) Plaintiff fails to plead wrongful means or malice; and (iv) the claim is barred by the four-month statute of limitations governing such a disguised Article 78 claim. Plaintiff's proposed SAC does not cure any of these defects.

For all of the reasons set forth in Part II.B above, the Court should dismiss Plaintiff's tortious interference claim against the PBA Defendants because any alleged conduct, including the alleged phone calls in the proposed SAC, was constitutionally protected speech/petitioning. PBA Mem. 21-22. Plaintiff ignores the on-point cases cited by the PBA Defendants that dismissed tortious interference claims that were similarly premised on alleged communications with and/or petitioning government bodies. *See id.* at 11 and 22 (citing *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004); *EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*, 147 F. Supp. 3d 63, 70 (E.D.N.Y. 2015); *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 107 (2d Dep't 2000)). The same result of dismissal on First Amendment/*Noerr-Pennington* grounds should be granted here.

Plaintiff also fails to plead the elements of his claim for tortious interference with his probationary, at-will employment. First, Plaintiff has not plausibly alleged that the PBA Defendants were a "but for" cause of CCRB's termination of his employment. PBA Mem. 22. Plaintiff relies on the allegation that, when CCRB notified him of his termination, Jennell Brooks of CCRB "explained, in sum and substance: 'Ron, you're putting too much heat on the agency.'" FAC ¶123. But there is no indication of what Brooks was allegedly referring to. Plaintiff lobs the self-serving conclusion that "[u]pon information and belief, that 'heat' reference was referring to

24

specific communications from the unions, threatening such things as strikes or other action, if the City did not fire Plaintiff." *Id.* ¶125. But no facts are alleged to support that purported "information and belief," and it is not entitled to consideration. *See Egan v. TradingScreen, Inc.*, 10 Civ. 8202, 2011 WL 1672066, at *9 (S.D.N.Y. May 4, 2011) ("Conclusory pleadings on information and belief are inadequate as a matter of law to survive a motion to dismiss." (internal quotes omitted)).

Moreover, the Court should deny leave to amend because the proposed SAC actually undermines, rather than supports, "but for" causation. There are no allegations to show that the PBA Defendants did anything that caused CCRB to change its mind from assigning Plaintiff to field investigator on December 3, 2024 (SAC ¶73), to terminating his employment on December 10, 2024 (*id.* ¶122). The only alleged event that occurred in the interim was Plaintiff filing his CCRB complaint, which had nothing to do with, and is not alleged to be known by, the PBA Defendants.

The proposed SAC also fails to cure the gap of pleading wrongful means or malice by the PBA Defendants. PBA Mem. 22. The new allegations show, at most, limited exchanges of information by telephone. The allegations do not remotely show the types of fraud or threats that would be necessary to establish wrongful means. *See Guard-Life v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194 (1980). Plaintiff's speculation that "[u]pon information and belief, during those phone calls, PBA Defendants communicated threats and demands that Plaintiff be terminated" (SAC ¶114) is not entitled to consideration. No "threats" are identified. Further, a "demand," even if properly pleaded, which it has not been, is not wrongful means (and is constitutionally protected). *See* Part II.B *supra.* Nor does Plaintiff even attempt to argue that the PBA Defendants were "act[ing] solely for the purpose of harming plaintiff," *Hoesten v. Best*, 34

25

A.D.3d 143, 159 (1st Dep't 2006), as opposed to promoting the union interests of officer fairness and public safety.

Plaintiff's only argument is that "[i]nterfering with a contract or business relationship for unlawfully discriminatory reasons is inherently either malicious or wrongful." Pl. Mem. 17. As Plaintiff is forced to admit, however, this argument is not supported by New York law. *Id.* In fact, this Court expressly rejected Plaintiff's argument in a case Plaintiff cites. *See Fried*, 2011 WL 2119748, at *9-*10. Putting aside that Plaintiff fails to plausibly allege that the PBA Defendants had any discriminatory intent, New York law does not allow a plaintiff to overcome the heightened pleading burden for tortious interference with probationary/at-will employment simply by alleging that the defendant had a "discriminatory" state of mind. *Fried*, 2011 WL 2119748, at *9 ("allegations of employment discrimination cannot be transmuted, without more, into claims of tortious interference").

Finally, because Plaintiff cannot dispute that "the gravamen of [his] complaint" seeks to challenge his termination by a City agency, he was required to bring his tortious interference claim within the four-month statute of limitations applicable to CPLR Article 78 claims. PBA Mem. 22-23. Article 78 is not limited to "arbitrary and capricious claims." Plaintiff ignores that CPLR 7803(3) broadly encompasses claims that raise the question of whether an agency's determination "was affected by an error of law." Plaintiff's tortious interference claim invokes this provision because it is premised on his theory that his termination was somehow wrongful. Nor can Plaintiff circumvent the statute of limitations simply by characterizing his claim as one for damages as opposed to reinstatement. New York law holds that "a successful article 78 proceeding for reinstatement is a prerequisite to a claim for damages by a discharged public

26

employee," and thus that the failure to timely bring an Article 78 proceeding is also fatal to the damages claim. *Ingrassia v. Cnty. of Sullivan*, 262 F. Supp. 2d 116, 120 (S.D.N.Y. 2003).

Plaintiff also questions whether the PBA Defendants have standing to raise the statute of limitations, but Plaintiff does not cite any authority in support of his argument. Rather, the PBA Defendants cited authority holding that the four-month statute of limitations applies even to claims against a defendant that was not the plaintiff's employer. PBA Mem. 23 (citing *Risley v. Rubin*, 272 A.D.2d 198, 198-99 (1st Dep't 2000), *lv. denied*, 96 N.Y.2d 701 (2001)). Such a holding makes sense because where, as here, Plaintiff has substantially exceeded the statute of limitations to bring a claim against his employer challenging his termination, he should not be permitted to collaterally attack his termination by belatedly contriving a claim against a third party.

## CONCLUSION

The Court should (i) grant the PBA Defendants' motion to dismiss the FAC against the PBA Defendants in its entirety, with prejudice; and (ii) deny Plaintiff's cross-motion for leave to amend.

Dated: New York, New York
     April 27, 2026

                                      Respectfully submitted,

                                        SPENCER FANE LLP

                                        By:   */s/Matthew C. Daly*
                                                  Matthew C. Daly

                                        711 Third Avenue
                                      New York, New York 10017
                                      (212) 907-7300
                                      mdaly@spencerfane.com

                                      *Counsel for Defendants Police Benevolent Association of the City of New York and Patrick Hendry*

28

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1 and Individual Practice Rule 5, and in accordance with the Court's Memo Endorsed Order, dated April 13, 2026 [Dkt. 62], regarding the length and form of briefing, it is hereby certified that the word count of this consolidated memorandum of law in reply on the PBA Defendants' motion to dismiss and in opposition to Plaintiff's cross-motion to amend is 8,397 words, exclusive of the caption, table of contents, table of authorities, and signature blocks.

Dated: April 27, 2026                    SPENCER FANE LLP

                                         By:___/s/Matthew C. Daly_____
                                              Matthew C. Daly

                                         711 Third Avenue
                                         New York, New York 10017-4014
                                         (212) 907-7300
                                         mdaly@spencerfane.com

29